CHARMERS INDUSTRIES, INC., et al., Plaintiffs,

v.

LIQUOR SALESMEN'S UNION LOCAL NO. 2 OF the STATE OF NEW YORK, AFL–CIO, Defendant.

KNICKERBOCKER LIQUORS CORPORATION, Plaintiff,

v.

LIQUOR SALESMEN'S UNION LOCAL NO. 2 OF the STATE OF NEW YORK, AFL–CIO, Defendant.

Nos. 76 Civ. 874 and 875 (CSH).

United States District Court, S. D. New York.

June 22, 1976.

Morris A. Edelman, New York City, for plaintiffs Charmers Industries, Inc., and others; Morton Schimmel, New York City, of counsel.

Putney, Twombly, Hall & Hirson, New York City, for plaintiff Knickerbocker Liquors Corp.; Miles W. Hirson, Joseph F. Porrino, New York City, of counsel.

Victor Feingold, New York City, for defendant.

## MEMORANDUM AND ORDER

HAIGHT, District Judge.

### Memorandum

The plaintiffs move this Court for an order staying an arbitration demand made by the defendant as contained in Defendant's Notice of Intention to Arbitrate, dated February 3, 1976 and served on February 6, 1976. Defendant opposes plaintiffs' motions and has cross-moved for an order compelling arbitration and for a preliminary injunction.

The above entitled actions were instituted by the plaintiffs, pursuant to 28 U.S.C.

§ 2201, for a declaratory judgment arising under § 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 185). Plaintiffs' complaints were filed after defendant served its Notice of Intention to Arbitrate. The complaints seek declarations that, in the circumstances of the case, plaintiffs are under no obligation to arbitrate with defendant.

Plaintiffs then moved, purportedly pursuant to the United States Arbitration Act, for an order staying arbitration. Defendant cross-moved for an order to compel arbitration, also relying upon the Federal Arbitration Act, particularly 9 U.S.C. § 4.

The parties' references to the Federal Arbitration Act are inapposite. The case is properly before the Court under the Labor Management Relations Act. Under Section 301(a) of that statute, 29 U.S.C. § 185(a), the district courts have jurisdiction "to compel arbitration in accordance with the terms of a collective bargaining agreement." *Engineers Assn. v. Sperry Gyroscope Co., Etc.,* 251 F.2d 133 (2d Cir. 1957).

The plaintiffs are all New York companies and/or corporations engaged in the sale of alcoholic beverages at wholesale to retail liquor stores, hotels, clubs, restaurants, bars and taverns in the New York metropolitan area.

The defendant, Liquor Salesmen's Union Local No. 2 of the State of New York, AFL–CIO, is an unincorporated labor organization which represents some 1350 to 1600 licensed liquor salesmen employed in the New York metropolitan area, and has maintained collective bargaining relations with wholesale distributors and suppliers, including the plaintiffs herein.

A collective bargaining agreement, effective November 1, 1968, amended effective September 1, 1969 and further amended by Memorandum of Agreements entered into as of November 1, 1973, was executed by each of the plaintiffs and Local 2 and was similar in all respects except for the employer named therein. On midnight, October 31, 1975, the contract between Local 2 and the plaintiffs expired. During the period September 11, 1975 until November 7, 1975, negotiations took place between the parties for a new collective bargaining agreement to take effect at 12:01 a. m. on November 1, 1975. During this same period, the plaintiffs had re-negotiated aspects of a collective bargaining agreement with Local 816, which represented the truck drivers employed by the plaintiffs. As a result of those negotiations, it was agreed between the plaintiffs and Local 816 that truck drivers would no longer pick up "C.O. D." payments from the customers of the plaintiffs. These new "C.O.D." procedures were implemented by plaintiffs on November 3, 1975.

As a practical matter, a new collective bargaining agreement between the plaintiffs and Local No. 2 was reached on November 2, 1975 when the parties prepared a handwritten memorandum of conditional settlement. The agreement was formally ratified by the membership of Local No. 2 on November 7, 1975.

During the week of November 3, 1975, a dispute arose as to the effects upon Local No. 2 salesmen of the new "C.O.D." procedures which were the result of the agreement between plaintiffs and the Local 816 truckers. There appeared to be some concern by the liquor salesmen that they were now responsible for picking up "C.O.D." payments. The plaintiffs deny that any liquor salesman was required to make any "C.O.D." pickups. In any event, defendant contends that the new "C.O.D." procedures are violative of the collective bargaining agreement between the plaintiffs and Local No. 2.

The defendant subsequently filed charges with the National Labor Relations Board regarding C.O.D. procedures. These charges were eventually withdrawn and a Notice of Intention to Arbitrate was served on the plaintiffs by the defendant pursuant to the terms of the collective bargaining agreement. It is this demand for arbitration which is the crux of the instant motion and cross-motion.

The plaintiffs oppose arbitration based on four different grounds:

1. There is no existing dispute between the parties requiring arbitration.

2. The defendant is estopped from seeking, and has waived or extinguished its right to, arbitration of the alleged dispute.

3. There is no valid arbitration clause existing between the parties.

4. There was no collective bargaining agreement between the parties at the time the alleged dispute first arose.

■ As to the plaintiffs' first contention that there is no existing dispute between the parties requiring arbitration, the United States Supreme Court has laid down guidelines to be followed by a court in deciding such a contention. In *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564 on pages 567, 568, 80 S.Ct. 1343 on page 1346, 4 L.Ed.2d 1403 (1960), the Court said:

> "The collective agreement calls for the submission of grievances in the categories which it describes, irrespective of whether a court may deem them to be meritorious. In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve. See *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468 [80 S.Ct. 489, 495, 4 L.Ed.2d 442]. The function of the court is very limited when the parties have agreed to submit all questions of contract arbitration to the arbitrator. *It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment,* when it was his judgment and all that it connotes that was bargained for." (emphasis added).

This Court believes that a dispute over work rules is the type of conflict which the parties intended to arbitrate when they entered into their collective bargaining agreement, which states in paragraph XVI:

> "Except as otherwise provided herein, in the event of *any dispute, difference, disagreement, grievance or controversy of any nature or character* shall arise between the Employer and Union, the parties agree that before any strike on the part of the Union or any lockout on the part of the Employer, such dispute shall be submitted to arbitration to the New York State Board of Mediation pursuant to its rules." (emphasis added).

In this regard, the words of the United States Supreme Court are particularly noteworthy. In *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Court said:

> "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed."

It is clear to this Court that the instant dispute is "a claim which on its face is governed by the contract." Accordingly, I hold that the plaintiffs' first contention must fail and that the conflict between the parties herein is one that falls within the purview of the arbitration agreement which they entered into.

■ The plaintiffs further contend that the defendant engaged in a strike on November 1 and 2, 1975, which resulted in a termination of the contract between the parties and thus a termination of the agreement to arbitrate. Without discussing the merits of the instant dispute, the Court notes that November 1 and 2, 1975 fell on a Saturday and Sunday, which are non-working days for Local No. 2 members.

Paragraph XXIV of the collective bargaining agreement between the parties herein states as follows:

"Negotiations for the renewal of this agreement shall commence at least 60 days prior to its expiration date. In the event that negotiations continue beyond the expiration of this agreement, the Employer and the Union agree that this contract shall continue in full force and effect during the period of negotiations and the Union agrees that during the continuance of the negotiations there shall be no strike called except as provided in Paragraph XVI(b) of this Agreement, and the Employer agrees that during the period of negotiations there shall be no lockout."

Plaintiffs allege that a strike did take place, thus violating the terms of Paragraph XXIV and for all purposes terminating the contract between the parties, including the arbitration clause. The defendant denies that a strike took place. In any event, the defendant alleges, the issue of whether there was an actual strike must be determined by the arbitrator, citing *Operating Engineers v. Flair Builders*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972).

Although *Operating Engineers* is not directly in point, the Court does use language which is pertinent to the question at hand. On page 491, 92 S.Ct. page 1712, the Court said of a broadly worded arbitration clause:

"There is nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration. In that circumstance, we must conclude that the parties meant what they said—that 'any difference,' which would include the issue of laches raised by respondent at trial, should be referred to the arbitrator for decision."

It is interesting to note that the language of the arbitration agreement in *Operating Engineers* was similar to that of the instant case. In *General Dynamics Corp. v. Local 5, Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO*, 469 F.2d 848 (1st Cir. 1972), the court, relying on *Operating Engineers*, held that the alleged breach of a no-strike clause was subject to arbitration under the terms of the collective bargaining agreement. The court stated:

"We believe that if the equitable defense of laches, which is a general defense not limited to contract suits nor dependent on the provisions of the contract, can be subject to an arbitration provision, then certainly the legal defense of repudiation, which necessarily requires an interpretation of the meaning of the contract and the intent of the parties, can be subject to an arbitration provision, if covered by its terms." (469 F.2d 848, at page 853).

Thus the issue of whether there was a strike by the defendant which would constitute a repudiation of the collective bargaining agreement, namely paragraph XXIV, is an issue properly to be decided by the arbitrator.

■ The defendant herein instituted proceedings before the National Labor Relations Board shortly after the instant dispute arose. It is undisputed that these proceedings were later discontinued by the Union without any formal determination by the Board. The plaintiffs contend that the institution of the National Labor Relations Board action by the defendant acted as a waiver of the Union's right to seek arbitration. In *Proctor & Gamble Ind. U. v. Proctor & Gamble Mfg. Co.*, 312 F.2d 181 (2d

Cir. 1962), the court made an interesting historical analysis in footnote 7 on page 189. In discussing National Labor Relations Act § 8(d) as amended, 29 U.S.C. § 158(d), the court said:

> "The striking out of the provision which defined violation of the contract as an unfair labor practice is strong evidence that Congress considered breaches of labor contracts to be *separate and distinct* from unfair labor practices, and intended that they should be separately *handled by separate tribunals*." (emphasis added).

Thus, this Court believes that the defendant's filing of a claim before the National Labor Relations Board in no way estops it from asserting its instant claim for arbitration pursuant to the terms of the collective bargaining agreement.

■ The plaintiffs next argue that the instant arbitration clause is unenforceable because it is not mutually binding on the parties herein. The gravamen of plaintiffs' contention is that ¶ XVI(b) does not restrict the defendant to first resort to arbitration when there is a violation of one of the enumerated paragraphs by the employer as set forth in said ¶ XVI(b). In support of their contention that the arbitration clause is unenforceable, plaintiffs direct this Court to *Globe Seaways, Inc. v. National Marine Engineers' Beneficial Association*, 451 F.2d 1159 (2d Cir. 1971) and a long list of New York cases. This Court finds *Globe Seaways* to be inapposite to the issue of lack of mutuality of obligation in the instant case. *Globe Seaways* concerned a proceeding on motion to confirm arbitration awards. The District Court denied the motion to confirm and the Court of Appeals affirmed, holding that the evidence was insufficient to establish that the parties had a valid agreement to arbitrate at the time the dispute arose. In the case at bar, the prior contract contained an arbitration clause. That contract remained in effect pending negotiations unless the employees struck. It is disputed whether a strike occurred. That question and its possible effect on the contract should be resolved by the arbitrator.

As to the plaintiffs' reliance on New York law, the Appellate Division, 1st Dept., wrote an interesting opinion *In the Matter of the Application of ALAN A. SCHACHTER and DANIEL M. HORAN, for a judgment restraining arbitration attempted to be had by LESTER WITTE & COMPANY*, App.Div., 383 N.Y.S.2d 316, N.Y.L.J., June 4, 1976. In that case, the court said:

> "Likewise, *the question whether the agreement is void for lack of mutuality is for the arbitrator*, not the court. *Matter of DeLaurentiis (Cinematografica)*, 9 N.Y.2d 503, 509, 215 N.Y.S.2d 60, 63, 174 N.E.2d 736, 738; *Matter of Weinrot (Carp)*, supra; *Matter of Exercycle Corp. (Maratta)*, 9 N.Y.2d 329, 214 N.Y.S.2d 353, 174 N.E.2d 463 (1961); 8 Weinstein-Korn-Miller, N.Y. Civil Practice, ¶ 7501.-23, p. 75–23.3.4. . . . .

> "The announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. Generally, it is for the courts to decide 'whether the parties have agreed to arbitrate the particular dispute.' *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 570–71, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403. We confine ourselves to the arbitration clause and leave the overall contract to the arbitrators. Indeed, the courts are prohibited from considering 'whether the claim with respect to which arbitration is sought is tenable, or otherwise pass[ing] upon the merits of the dispute.' (CPLR 7501)." (emphasis added).

Accordingly, I find that the issue of whether the agreement to arbitrate lacks mutuality should be decided by the arbitrator.

■ One additional issue raised by the plaintiffs concerns the sufficiency of the Notice of Intention to Arbitrate which was served by the defendant. Briefly stated, the plaintiffs contend that the "Notice" lacked specificity and did not satisfy the statutory requirements of New York Civil Practice Law and Rules § 7503.

This Court believes that plaintiffs' argument is without merit. It is obvious that it was defendant's Notice of Intention to Arbitrate which precipitated the instant action in this Court. Plaintiffs appear to be aware of the nature of the dispute between the parties herein; it can hardly be said that plaintiffs' complaint and affidavits are based on merè conjecture and speculation. Consequently, plaintiffs' reliance on the failure of the defendant to satisfy N.Y.C.P. L.R. § 7503 is misplaced. In any event, as noted *supra,* issue is fairly joined under the Labor Management Relations Act.

The defendant has requested that this Court enter an order for a preliminary injunction to restore the status quo ante, pending arbitration proceedings as to the C.O.D. procedures. Although this Court believes that the dispute between the parties herein should be determined by an arbitrator, such a determination is based not on an evaluation of the merits of the conflict but rather on a belief that the instant dispute is one which is arbitrable under the terms of the collective bargaining agreement. As a practical matter, this Court must review the contentions of the parties to determine whether a preliminary injunction should issue. In doing so, I was not convinced that the defendant or its members would be irreparably injured by the C.O.D. procedures presently being utilized by the plaintiffs, pending a determination by the arbitrator.

Unlike the cases cited by defendant in its brief, there is no concrete showing that any member will lose his job or be damaged financially. Defendant's contentions in support of its application for a preliminary injunction can best be described as speculative and insufficient to warrant the extraordinary relief sought.

Accordingly, plaintiffs' motion to stay arbitration is denied. To the extent of compelling arbitration of the instant C.O.D. procedure dispute, defendant's cross-motion is granted. In all other respects, defendant's cross-motion is denied.

The Court will retain jurisdiction of this action pending arbitration of the dispute, and the case will be placed on the suspense docket of this Court pursuant to local Calendar Rule 20(A), subject to restoration to the calendar of the undersigned on application of either party.

So Ordered.