Chief Judge Desmond.
We granted petitioner leave to appeal so that we might consider certain problems in the law of arbitration.
In 1957 petitioner De Laurentiis, an Italian producer of motion pictures, respondent Cinematográfica, a Panamanian corporation which distributes films, and respondent Enrique Campos Menendez, an author (herein called “ Campos ”), made a written agreement whereby the three parties covenanted to do what was necessary for the production and distribution of a motion picture to be based on Campos’ biography of the South *507 American patriot Bolivar. De Laurentiis, as producer, was to begin photography within 15 months from the date of the writing and was to complete production within 8 months more and was to devote to the enterprise the major part of his time and effort beginning at the date of the agreement. He was required to engage a writer or writers of the first rank to prepare a story outline, a 1 ‘ screen treatment ’ ’ and thereafter a final scenario. Campos and De Laurentiis were to consult during the preparation of the story outline and scenario. De Laurentiis was to complete a scenario in final form within three months from the date of the agreement and if Cinematográfica did not approve that script De Laurentiis was to revise it. De Laurentiis undertook to make all necessary arrangements for financing, for the hiring of actors and a director and for world distribution of the completed picture, all this to be subject to the prior approval of Cinematográfica which promised not to withhold such approval unreasonably. Cinematográfica made certain other commitments as to financing and distribution. Other provisions required De Laurentiis and Cinematográfica to share expenses up to a total of $150,000. Campos was to act as consultant and give his consent to the use of his book for a fee of $75,000. There were in the contract elaborate provisions whereby, if the final scenario should be unacceptable to De Laurentiis, Cinematográfica should have the right to take over the whole project by reimbursing De Laurentiis for his expenditures.
Paragraph 14 of the contract required that any dispute arising thereunder should be submitted to arbitration in New York City under the rules and regulations of the American Arbitration Association and the laws of New York State, and in connection thereto each of the parties designated residents of New York City to act as their respective agents for the receipt of process in the State of New York. The motion picture has never been produced and respondents charge that De Laurentiis has never engaged a writer for the scenario or performed any of his other obligations under the agreement. On June 20, 1960 New York City attorneys who had been designated as representatives of respondents sent on their behalf to American Arbitration Association a demand for arbitration of the disputes which had arisen out of the contract between their clients and De Laurentiis and sent a copy of this demand to the agent (Serpe) designated by De Laurentiis.
*508 The letter which demanded arbitration stated that the disputes had arisen from a breach by De Laurentiis of 11 numerous provisions of the said contract of November 1, 1957, specifically paragraphs 2, 3, 4, 5, 6 and 8 and his resultant breach of other provisions of the contract dependent for their operations on performance of the obligations imposed by the specified paragraphs.” The paragraphs so specified describe all the obligations undertaken by petitioner De Laurentiis and so the demand for arbitration (read with respondents’ affidavits) charged De Laurentiis with having failed to perform any of the obligations undertaken by him. In the letter of demand, damages of Cinematográfica were claimed in a total of $1,105,000 broken down as follows: advanced to De Laurentiis, $75,000; expenditures for travel and other necessary expenses, $85,000; legal expenses, $20,000; loss of business reputation of Cinematográfica, $150,000; and loss of its profits, $600,000. Damages of respondent Campos (Menendez) were set forth as: loss of his $75,000 fee as consultant and $100,000 damage to his business and professional reputation.
De Laurentiis responded to this demand for arbitration by commencing the present proceeding for a stay. His petition says that his agreement with Cinematográfica and Campos was unenforcible because the promises therein contained were illusory. Also, says he, even assuming the agreement to be valid, the issues and the damages should be limited by the court to those arising directly out of the alleged breach of the agreement.
Special Term denied the application for a stay. The court’s opinion held that petitioner was barred from litigating the validity of the contract because, so the court found, petitioner had participated in the selection of arbitrators and in the arbitration proceeding itself. On appeal the Appellate Division, while agreeing with Special Term that the participation of De Laurentiis had debarred him from litigating any alleged invalidity of the contract, went further and examined into his other allegations: that the contract was illusory and that the demand for arbitration was not sufficiently definite. The Appellate Division ruled against him on both these issues.
The holdings below that petitioner so participated that he can no longer contest the validity of the agreement nor the arbitrability of the dispute were based on a series of letters written *509 on behalf of petitioner to respondents’ representatives in June, July and August, 1960, after receipt by Serpe, petitioner’s designated representative, of respondents’ demand for arbitration. We do not think that the mere requests by petitioner’s agent Serpe for extensions of time were ££ participation ” in the arbitration within the meaning of subdivision 2 of section 1458 of the Civil Practice Act, construed by us in Matter of National Cash Register Co. (Wilson) (8 N Y 2d 377). Reasonably read, the various applications made by Serpe were no more than1 successive requests for time to allow petitioner to decide whether to participate in the selection of arbitrators and in the arbitration proceedings or to begin court proceedings for a stay of arbitration. At the time these letters were written neither party had done anything about selecting the arbitrators. It would be unfair to construe careless language by Serpe (whose authority was limited to receiving process) to mean that petitioner was agreeing to go forward in the arbitration.
We turn now to petitioner’s arguments for a stay. The first of his positions is that the agreement on its face is so lacking-in mutuality that it bound neither party and could not produce an arbitrable dispute. This, however, seems to be completely answered by our decision in Matter of Exercycle Corp. (Maratta) (9 N Y 2d 329). The Exercycle Corporation had argued that its contract with Maratta was illusory since the latter had not specifically agreed to work for life or any other definite period. We pointed out in the Exercycle opinion that the resolution of such a dispute depended primarily on a construction of the agreement and that, when there were permissible differences of interpretation, the issue was for the arbitrators and not for the court. The present agreement, as petitioner points out, does leave to future agreement the approval of the story outline and scenario and failure to approve might put an end to all the obligations. However, De Laurentiis and Campos expressly promised each other to consult at reasonable times and places during the preparation of the outline and of the scenario 1 £ to the end that both De Laurentiis and Campos may make every effort in good faith to cause to be created, within the period specified herein, a story outline, screen treatment and final scenario acceptable to both.” Thus, in addition to the implication of good faith read into every contract (see Wood v. *510 Duff-Gordon, 222 N. Y. 88), we had an express promise of consultation and of good-faith effort to bring to completion a scenario of such form and quality as to be acceptable. It is for the arbitrators to decide what, under all the circumstances, these covenants contemplated and whether petitioner did all that he was thereby required to do.
As his other ground for a stay petitioner attacks the sufficiency of the demand for arbitration, arguing that the issues and damages are stated in much too general terms and that some of the round figure damage items are outside any possible scope of the arbitration clause. We are told that the claim for “ Loss business reputation ” and ‘1 Damage to personal and business reputation ” as well as the items for legal expense and travel and secretarial expenditures describe purely consequential damages not recoverable under the rule of Matter of Marchant v. Mead-Morrison Mfg. Co. (252 N. Y. 284) and De Lillo Constr. Co. v. Lizza & Sons (7 N Y 2d 102). As to the alleged failure of the demand, for arbitration to set forth with definiteness any dispute or disputes, we think the demand (plus the affidavits) is to be read as alleging that petitioner took none of the steps required of him by the agreement and did none of the things he had promised to do. As to whether damages of the kind listed are recoverable, it must be remembered that the parties agreed not only to arbitrate their differences but to do so under the rules of the American Arbitration Association, one of which rules (No. 42) says that the arbitrator in his award “ may grant any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties ”. The arbitration agreement here called for the submission of “ Any dispute arising under this agreement ’ ’ and was not otherwise limited. When we incorporate rule 42 into that clause we have a grant of power to the arbitrators so broad that it would be inappropriate to determine in advance of an arbitration that there must be eliminated from any award any items of damage which the arbitrators might consider ‘ ‘ just and equitable ’ ’ under the facts as developed before the arbitrators (see Matter of Transpacific Transp. Corp. [Sirena Shipping Co., S. A.], 9 A D 2d 316, affd. 8 N Y 2d 1048).
The order should be affirmed, with costs.