Argued March 5, affirmed April 1, 1975

## WARNOCK, *Appellant, v.* BONNEVILLE GENERAL AGENCY, INC., *Respondent.*

533 P2d 333

*Richard K. Klosterman,* Portland, and *David C.*

*Bond,* Portland, argued the cause for appellant. On the brief were Richard K. Klosterman and Klosterman & Joachims, Portland.

*Walter J. Cosgrave,* Portland, argued the cause for respondent. On the brief were Frank H. Lagesen and Cosgrave & Kester, Portland.

TONGUE, J.

This is an action for damages against an insurance broker for the wrongful cancellation of an automobile insurance policy under which plaintiff was the named insured. The complaint alleges that as a result of the cancellation the insured lost the opportunity to settle a claim against him for the policy limit of $10,000 and instead suffered a judgment in the sum of $216,093 in favor of the driver of a car involved in a collision with plaintiff's car.

In a prior action by plaintiff against the insurance company which had issued the policy, the court found that the cancellation of the policy was invalid and awarded plaintiff judgment against the insurer for the policy limit of $10,000. Plaintiff brings this action to recover the difference between that amount and $216,093, the amount of the judgment taken against him.

Plaintiff appeals from a judgment for defendant, which was entered after the trial court had sustained a demurrer to plaintiff's complaint on the ground that any cause of action by the plaintiff against defendant was in tort for interference with the contract of insurance between plaintiff and the insurance company and therefore was barred by the two year statute of limitations.

Plaintiff contends, to the contrary, that he had a cause of action in contract against defendant for breach of defendant's fiduciary duty as plaintiff's agent and that this action was filed within the six year statute of limitations for actions for breach of contract.

The controlling facts, as alleged in the complaint, are as follows: On January 17, 1970, plaintiff employed defendant as his insurance broker and agent to procure for him a policy of automobile insurance for one year. On the same date and as a part of the same transaction, plaintiff entered into a premium finance agreement, under which defendant agreed to pay to the insurance company the entire premium for the policy and plaintiff agreed to repay defendant in eight monthly installments, the first of which was due on February 17, 1970. The defendant then paid the entire premium and the insurance policy was then issued by the insurance company.

On April 17, 1970, plaintiff failed to make the monthly installment payment to defendant as due on that date under the premium financing agreement. On April 24, 1970, defendant, purporting to act as agent for the insurance company, sent a notice to plaintiff, with a copy to the company, of cancellation of the insurance policy, effective May 6, 1970, for nonpayment of premium. That cancellation was wrongful because it was not initiated by the insurance company and defendant had no power of attorney from plaintiff authorizing cancellation of the policy for nonpayment of plaintiff's debt to defendant. Plaintiff's complaint alleges that by such conduct defendant "breached its employment and financing contract with the plaintiff," under which defendant had "a continuing contractual

duty to the plaintiff not to commit any act which would prevent performance of the policy of insurance it had been retained by plaintiff to procure for him."

The complaint goes on to allege that on June 9, 1970, plaintiff was involved in an automobile accident, resulting in an action for damages against him; that an offer was made to settle that action for the amount of the insurance policy, but that the insurance company, believing its policy had been cancelled, refused to accept that offer; that a judgment in that action was then taken against plaintiff for $216,093; that plaintiff then filed an action against the insurance company to recover that amount, in which it was held that "the attempted cancellation was invalid and ineffective"; and that there was coverage under the policy "to the extent of the policy limit" of $10,000, and that a judgment for that amount was entered in favor of plaintiff against the insurance company.

Finally, the complaint alleges that the failure of the insurance company to accept the offer to settle the claim against plaintiff for $10,000 was caused by the wrongful cancellation of the insurance policy by defendant "by reason of which" plaintiff has been damaged in the sum of $206,093, plus interest and costs.

Plaintiff contends that defendant was his agent to procure a policy of automobile insurance that would protect him from liability for a period of one year; that as an implied term of the contract of agency defendant owed a duty of loyalty to plaintiff; that, as a result, the defendant was under a duty not to commit any act that would prevent the performance of the policy of insurance it had been retained by plaintiff to procure for him; that this duty did not cease upon

the procurement of the insurance policy even if the agency relationship terminated at that time; and that for breach of this duty plaintiff has a remedy for breach of the contract of agency.

Defendant contends, on the contrary, that upon the procurement of the insurance policy the agency relationship was terminated and that there was no continuing contractual duty under the facts pleaded by the complaint which could be the subject of an action for breach of contract.

The relationship between an insured and an insurance broker engaged by him to procure insurance has been described as a principal-agent relationship. See 3 Couch on Insurance 2d 282, § 25:1 (1960). Cf. *Hamacher v. Tumy et al*, 222 Or 341, 347, 352 P2d 493 (1960). The description of this relationship as one of agency has been criticized as misleading, however. See Keeton, Basic Text on Insurance Law 56, § 2.5(c) (1971).

■ Whether or not this relationship is one of principal and agent, an agreement by an insurance agent or broker to procure an insurance policy for an applicant is a contract and may give rise to an action for breach of contract in the event that the broker violates any duty imposed upon him by that contract. *Rodgers Ins. v. Andersen Machinery*, 211 Or 459, 468, 316 P2d 497 (1957).

■ It has been held that it is an implied provision in every contract that neither party will engage in any act that will "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Perkins v. Standard Oil Co.*, 235 Or 7, 16, 383 P2d 107, 383 P2d 1002 (1963), quoting 3 Corbin on Contracts 278, § 561 (1960).

■ Thus, whether or not defendant was an agent of plaintiff so as to be under a continuing fiduciary duty of loyalty to the plaintiff as his principal, as contended by plaintiff, defendant was under a duty imposed by an implied provision of the contract with plaintiff not to frustrate or defeat the object of that contract. According to the allegations of the complaint, the object of the contract was "to procure for plaintiff a public liability insurance policy for one year's duration on a 1967 Chevrolet Impala convertible belonging to the plaintiff."

■ We need not decide in this case, however, whether or not that duty was one which, as a duty imposed by the contract between the parties, continued after the procurement of the insurance policy, so as to impose liability upon defendant for breach of contract for causing the subsequent cancellation of the insurance policy. We need not decide that question because defendant contends that plaintiff's failure to make a premium payment due under the premium financing agreement provides a complete defense to any liability that defendant might otherwise have for causing the cancellation of the insurance policy, citing Restatement of Agency 2d § 415.[①] Plaintiff has not replied to that contention by the citation of any authorities to the contrary.

It has been held elsewhere that under similar facts involving contracts for the procurement of insurance, the failure of the insured to make premium payments to the broker who procured the policy and

---

[①] Restatement of Agency 2d 415, provides as follows:

"The liability of the agent to the principal can be avoided, terminated, or reduced by a breach of contract by the principal, his contributory fault, or his failure to mitigate damages."

who is liable to the insurance company for payment of the premiums has been held to be a complete defense in an action by the insured against the broker for damages resulting from the broker causing a cancellation of the insurance policy.

In *Rozen v. Cohen,* 350 Mass 231, 214 NE2d 451, 455 (1966), an insurance broker who had procured policies of insurance and who was liable to the insurance companies for payment of the premiums on such policies caused the insurance companies to cancel the policies because of the failure of the insured to make payments due by him to the broker for the premiums on these policies. As in this case, the insured brought an action for damages against the broker, alleging that he had been unable to replace the policies except by payment of higher premiums. The court affirmed a directed verdict in favor of the defendant, citing Restatement of Agency 2d § 415, and holding that the broker could properly regard plaintiff's failure to pay as a "material breach of whatever contract of agency had theretofore existed" and was "free to rid himself of a brokerage relationship in which his principals had been long in default * * *."

To the same effect, see *United States F & G Co. v. Hollerich & Walgenbach Co.,* 22 Ill App 3d 151, 319 NE2d 280, 286 (1974). See also *Ruby S.S. Co. v. Johnson & Higgins,* 18 F2d 948, 950 (2d Cir 1927), and 16 Appleman, Insurance Law and Practice 539, § 8844 (1968). Cf. *Prime v. Prime,* 172 Or 34, 61, 139 P2d 550 (1943), and Restatement of Contracts § 397.

In those cases the brokers who caused the insurance policies to be cancelled had not yet paid the premiums to the insurance companies, but were liable to the insurance companies for such payments. In

those cases the cancellation of the policies was done to relieve the brokers from their obligations to make those payments. In this case the broker had already paid the premium in full. The cancellation of the policy presumably would enable the broker to secure a refund of a portion of the premiums paid by him. We fail to see that this distinction in the facts is material to the issue presented in this case.

We recently said in *Wasserburger v. Amer. Sci. Chem.*, 267 Or 77, 82, 514 P2d 1097 (1973), that:

> "It is well established, at least as a general rule, that a plaintiff who seeks to recover under the terms of an express contract for defendant's failure to perform its terms must plead and prove his own substantial performance or a valid excuse for his failure to perform. Lamb-Weston et al v. Ore. Auto Ins. Co., 219 Or 110, 116, 341 P2d 110, 346 P2d 643 (1959); Turner v. Jackson, 139 Or 539, 548, 4 P2d 925, 11 P2d 1048 (1932); Lewis v. Siegman, 135 Or 660, 664, 296 P 51, 297 P 1118 (1931). See also ORS 16.480."

It appears from the allegations of this complaint that plaintiff does not regard the agreement to procure the insurance policy (and defendant's obligations under that agreement) as separate from the premium financing agreement (and plaintiff's obligations under that agreement). On the contrary, plaintiff alleges that "pursuant to the employment and financing contract" the defendant procured the policy of insurance and that by defendant's subsequent conduct the "defendant breached its employment and financing contract with the plaintiff."

The plaintiff goes on to allege that defendant breached the contract "in this":

> "* * * That on April 24, 1970, defendant claim-

ing the power by virtue of its continuing contractual relationship with the plaintiff, and purporting to act as agent for and in the name of Utah Home Fire Insurance Company, sent a notice to plaintiff, with a copy thereof to Utah, of cancellation of said policy, effective May 6, 1970, for nonpayment of premium. That defendant sent said notice of cancellation because *plaintiff failed to make the installment payment due defendant on April 17, 1970, according. to the terms of said premium finance agreement. * * *"* (Emphasis added)

Thus, plaintiff's complaint not only fails to allege performance by him of what plaintiff alleges to be the single agreement between the parties, but admits that he failed to make the installment premium payments and that such failure was in breach of his agreement with defendant. Plaintiff alleges no excuse or explanation as a reason why he failed to make such payment.

Under these facts, although we may not agree with the reason given by the trial court, we hold that the trial court did not err in sustaining defendant's demurrer to plaintiff's complaint. The judgment of the trial court is affirmed.[2]

---

[2] Because of the basis on which we decide this case we need not consider and decide the further question whether, if plaintiff were not barred from recovery by his own breach of the contract between the parties, he would be entitled to recover from defendant the full amount of the judgment taken. against him in the sum of $216,093, less the sum of $10,000, as previously paid by the insurance company, according to the allegations of the complaint.