**LOCAL 3–7, INTERNATIONAL WOOD- WORKERS OF AMERICA,**
Plaintiff–Appellant,

v.

**DAW FOREST PRODUCTS COMPANY,**
Defendant–Appellee.

No. 86–3891.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1987.

Decided Nov. 30, 1987.

Robert D. Durham, Kulongoski, Durham, Drummonds & Colombo, Portland, Or., for

plaintiff-appellant. On brief was Lynn–Marie Crider, Gladstone, Or.

Norman J. Wiener and Maureen R. Sloane, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant-appellee.

Before SNEED and HALL, Circuit Judges, and LEGGE,[*] District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Local 3–7 of the International Woodworkers of America (Union) brought this action in the district court against DAW Forest Products Company (Company) for specific performance of their "Memorandum of Agreement." In a published opinion, the district court found that the Memorandum was not an enforceable contract and dismissed the Union's claims. *Local 3–7, International Woodworkers of America v. Daw Forest Products Co.*, 643 F.Supp. 122 (D.Or.1986). The district court found that the Memorandum's key terms were "simply too vague," providing an insufficient basis for determining the existence of a breach or the appropriate remedy. *Id.* at 124. The Union now appeals.

We reverse and remand to the district court.

### I.

In late 1983, the Company began negotiations with Diamond International Corporation (Diamond) to purchase Diamond's sawmill and logging operations in the Bend, Oregon area. The Company ultimately purchased the logging operations in May of 1984 with the intention of operating the logging portion of the business as long as it was profitable. At the time of the purchase, Diamond had collective bargaining agreements with both the sawmill and logging employees. The Company assumed the collective bargaining agreement for the

---

[*] Honorable Charles A. Legge, United States District Judge, Northern District of California, sitting by designation.

sawmill employees, but refused to assume the agreement for the logging employees. This action concerns the logging employees.

Prior to the May, 1984 purchase, Company and Union officials met in October, 1983 and on March 2, 1984. Company officials stated that they did not intend to continue logging operations unless they could compete with logging by independent contractors. At the March 2, 1984 meeting, Company and Union officials entered into a Memorandum of Agreement, reproduced in the appendix to this opinion.

The Memorandum of Agreement basically provided the Union with the opportunity to present a plan to keep the logging operations competitive. The first clause of the Memorandum states that the Union could submit proposals for a new "Working Agreement" to the Company within two weeks of the execution of the Memorandum. The Company agreed to consider these proposals in good faith and to determine, in its opinion, whether they had "merit." The first clause also explained that an acceptable "Working Agreement" would create an employee incentive program and provide for the continuation of Company logging as long as it could "perform in a competitive basis with area Contract Loggers and [could] operate economically and efficiently." If a Union proposal had "merit," further discussions were to be conducted within the subsequent two weeks.

If the Company determined that a Union proposal was "without merit," it agreed to follow certain procedures outlined in clauses two and three of the Memorandum. The second clause provided that the Company would continue the logging operation so long as Company equipment was operable, economically feasible to operate, and safe. However, "[w]hen in the opinion of the Company, the logging equipment is determined to be inoperative, unsafe or uneconomical to operate, it shall be retired and will not be replaced by the Company." The third clause provided that as employees became unemployed due to equipment retirement, the Company would make a rea-

sonable effort to reemploy as many displaced employees as possible in other company jobs.

On March 13, 1984, the Union submitted a letter to the Company expressing an interest in formulating an incentive-based logging program competitive with independent contract logging. The Union letter explained, however, that it was impossible to present a detailed proposal without contractor, inventory, and equipment cost information from the Company. A Company official apparently stated that this letter had "some merit," but expressed doubts regarding it.

Over the next several months, the Company and the Union discussed an incentive program. However, the Company never supplied the requested cost data and the Union failed to submit a detailed proposal.

In March of 1985, the Company decided to end company logging operations. The Company based its decision on its staff's recommendation that $865,000 had to be spent on major equipment repairs and replacement necessary for safety and efficiency. The Company believed that in light of such an expenditure, Company logging could not be competitive with independent logging.

On March 21, 1985, the Company notified the Union of its decision to end logging operations and laid off sixty-two of its sixty-eight logging employees. The district court found that the "Company made reasonable efforts to reemploy these workers." *Daw Forest*, 643 F.Supp. at 124.

The Union brought this action in district court, claiming that the Company breached the first clause of the Memorandum of Agreement by failing to engage in good faith negotiations by failing to provide cost data. The Union also claimed that the Company's shutdown of the logging operations breached the Memorandum's second clause, arguing that the Memorandum required a piecemeal phase-out of logging operations.

The district court ordered a bifurcated trial. After a bench trial on the question of Company liability, the district court found: (1) the first clause of the Memoran-

dum is unenforceable because its terms are too vague to provide a basis for determining the existence of a breach and an appropriate remedy; and (2) the second and third clauses are unenforceable since they are dependent on the unenforceable first clause *Id.* at 125–26. Alternatively, the court found that the second clause itself is unenforceable because it is too vague to provide a basis for determining the existence of a breach, and that the third clause was not breached. *Id.* On appeal, the Union disputes the court's finding that the first and second clauses are unenforceable.

## II.

We have jurisdiction over this action pursuant to section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), since· it is a suit alleging violation of a contract between an employer and a union. The parties do not dispute the fact that this court has jurisdiction even though the Memorandum of Agreement is not a collective bargaining agreement. *Cf. Retail Clerks International Ass'n., Local Union Nos. 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 25–28, 82 S.Ct. 541, 546–548, 7 L.Ed.2d 503 (1962) (section 301 jurisdiction exists over agreements "significant to the maintenance of labor peace," *id.* at 28, 82 S.Ct. at 548); *Rehmar v. Smith,* 555 F.2d 1362, 1366 (9th Cir.1977) (jurisdiction exists over alleged breach of pension benefit eligibility rules).

The Company argues that even if the contract is valid, the question of whether it failed to negotiate in good faith is for the National Labor Relations Board. This contention is based on the fact that the existence of an unfair labor practice, such as a breach of the statutory duty to bargain in good faith under 29 U.S.C. § 158(a)(5), is within the expertise of the Board. *Burke v. French Equipment Rental, Inc.,* 687 F.2d 307, 311 (9th Cir.1982). However, in section 301 suits, the courts and the Board generally exercise concurrent jurisdiction, even where an unfair labor practice may be implicated. *Lumber Production Industrial Workers Local No. 1054 v. West Coast Industrial Relations Ass'n.,* 775 F.2d

1042, 1045 (9th Cir.1985); *cf. Laborers Health and Welfare Trust Fund v. Kaufman & Broad of Northern California, Inc.,* 707 F.2d 412, 415 (9th Cir.1983) (Board has primary jurisdiction when section 301 suits involve questions of representation and proper bargaining units.).

In a section 301 case, we must apply the federal substantive law of labor contracts, which is fashioned to effectuate the policy of our national labor laws. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). We may apply state law, however, if it is compatible with federal labor policy. *Id.* at 457, 77 S.Ct. at 918.

## III.

We first address the Union's contention that the district court erred in finding that the first clause of the Memorandum (governing submission and consideration of Union proposals for a Working Agreement) was overly vague and therefore unenforceable. We review the district court's interpretation of language on the face of the Memorandum de novo. *Irwin v. Carpenters Health & Welfare Trust Fund,* 745 F.2d 553, 555 (9th Cir.1984). However, a trial court's interpretation of an ambiguous contract in light of surrounding circumstances is factual and will be reversed only if its interpretation is clearly erroneous. *Hanson v. Prudential Insurance Co.,* 783 F.2d 762, 764 (9th Cir.1986); *In re U.S. Financial Securities Litigation,* 729 F.2d 628, 632 & n. 1 (9th Cir.1984).

■ The district court properly recognized that an agreement is unenforceable if its terms are not sufficiently specific to enable a court to determine breach and remedy. *Daw Forest,* 643 F.Supp. at 124; *see Restatement (Second) of Contracts,* § 33(2) (1981). The district court concluded that the Company had too much discretion under the written terms and surrounding circumstances such that it could not determine whether the Company had given a Union proposal good faith consideration as to whether it had "merit." We disagree.

We recognize that a " 'contract to make a contract' is not a contract at all." 1 A. Corbin, *Corbin on Contracts*, § 29 at 85 (1963) (hereinafter *Corbin* ); *see also id.* at § 95. A contract to make a contract is unenforceable because essential terms are left to future agreement. *Id.* at § 29. The Memorandum here, however, is not a "contract to make a contract." No essential terms of a future working agreement are left undefined since the Memorandum does not require that a working agreement actually be concluded. *See Corbin* § 29 at 89–90; *see, e.g. Pinnacle Books, Inc. v. Harlequin Enterprises*, 519 F.Supp. 118, 121 (S.D.N.Y.1981). Instead, the Memorandum outlines the agreed upon *procedure governing discussion and consideration* of proposals for a new working agreement. As such, the Memorandum "to consider and discuss" is akin to a "contract to negotiate." This type of an agreement may be enforceable, particularly in the context of labor relations. *Corbin* § 95 & n. 6 at 397.

In deciding whether this first clause is sufficiently certain to be enforceable, the district court was bound "to determine, as far as is possible, the intention of the contracting parties and to give legal effect thereto." *Corbin* § 95 at 396. Here, the district court determined that the parties did not view the Memorandum as a binding contract, but "intended to work out an agreement in the future." *Daw Forest*, 643 F.Supp. at 124.

■ We review the district court's finding regarding the intent of the parties under the clearly erroneous standard. *May v. Nevada Irrigation District*, 600 F.2d 1280, 1282 (9th Cir.1979). We hold that the district court's finding of absence of intent is clearly erroneous. The court apparently based this finding on its misconception that if a party intends to discuss a second contract in the future, it could not make a binding contract regarding the procedure for those discussions. The district court cites no evidence in support of its finding. *Daw Forest*, 643 F.Supp. at 124. Because the Memorandum was written and signed by both parties, and in light of the parties' subsequent negotiations regarding a working agreement, we believe the district court was in error in finding that the parties did not intend to be bound. *See Purvis v. United States*, 344 F.2d 867, 869 (9th Cir. 1965) ("It is clear that the parties did not intend to work without a contract; that they thought they had a contract."); *NLRB v. Beckham, Inc.*, 564 F.2d 190, 195 (5th Cir.1977) (record supported conclusion that negotiators believed agreement was binding).

It is not enough, however, that the Union and the Company believe their Memorandum was binding; the Memorandum must be sufficiently certain "such that the court can determine what the terms of that agreement are." *Corbin* § 95 at 394. The district court found that it had no basis for determining whether the Company breached its promise to give the Union's proposals good faith consideration. *Daw Forest*, 643 F.Supp. at 125. The court explained that the Memorandum provides only that the Company give good faith consideration as to whether a proposal had "merit," such merit to be determined by the ability of Company loggers to operate economically, efficiently and competitively with independent loggers. These standards for a meritorious proposal, the court concluded, left "too much discretion" to the Company. The court further explained that since essential terms of a working agreement were left undefined, and since there was no history of bargaining between the parties, it could not determine whether the Company breached its duty of good faith consideration. *Id.* at 125.

■ The Company's duty to give good faith consideration as to the merit of Union proposals is not overly vague under contract law. *See De Laurentiis v. Cinematografifca de las Americas*, 9 N.Y.2d 503, 174 N.E.2d 736, 215 N.Y.S.2d 60 (1961) (promise to consult in good faith upheld). We are guided by the contract principle that we avoid destruction of contracts because of uncertainty and construe them to effectuate the reasonable intentions of the parties if possible. *See, e.g., Van v. Fox*, 278 Or. 439, 564 P.2d 695, 699 (1977). Under contract law, the district court could

determine breach of the duty of good faith consideration by examining whether the Company had exercised its "honest judgment" or whether it had met the reasonable person standard in rejecting the Union's proposal. *See Mattei v. Hopper*, 51 Cal.2d 119, 124, 330 P.2d 625, 627 (1958) (quoting 3 Williston, *Contracts* (rev. ed. 1936), § 675A at 1943) (honest judgment standard appropriate in cases where the factors involved do not permit use of reasonable person standard); *In re Wonderfair Stores, Inc.*, 511 F.2d 1206, 1210 (9th Cir.1975) (quoting *Mattei*).

■ In addition, the first clause is not overly vague under principles of federal labor law regarding breach of the duty to bargain in good faith. *See generally* 29 U.S.C. § 158(d).[1] A party's subjective "good faith" in bargaining may be ascertained from an examination of the totality of the circumstances indicative of mental state. *Seattle–First National Bank v. NLRB*, 638 F.2d 1221, 1225 (9th Cir.1981). The courts may inquire as to whether a party genuinely desires to reach an agreement. *Pittsburgh–Des Moines Corp. v. NLRB*, 663 F.2d 956, 959 (9th Cir.1981). These principles of federal labor law and the generally accepted rules of contract law discussed above provide sufficient standards for determining whether the Company's duty of good faith consideration was breached.

■ The district court also held that it could not fashion a remedy under the Memorandum, since ordering the parties back to the bargaining table would be futile. *Daw Forest*, 643 F.Supp. at 125. This rationale does not support a finding that the Memorandum is so vague that a remedy cannot be fashioned, since federal courts have wide latitude in fashioning remedies in section 301 cases. The Supreme Court has stated that "[t]he range of judicial inventiveness will be determined by the nature

of the problem." *Lincoln Mills*, 353 U.S. at 457, 77 S.Ct. at 918; *see, e.g.*, *Great Chinese American Sewing Co. v. NLRB*, 578 F.2d 251 (9th Cir.1978) (discussing back pay, reopening and bargaining orders). Therefore, the district court erred in failing to recognize that other remedies could be fashioned if the clause was breached.

## IV.

In light of our conclusion that the first clause is enforceable, we turn to the task of defining the duties under the Memorandum. The Company concedes that if the Memorandum is enforceable, it had a duty to consider Union proposals in good faith and determine whether they had merit. However, the Company contends that this duty was never triggered since the Union failed to produce a "firm proposal." The Union, on the other hand, contends that the letter of March 13 was a sufficient initial proposal to trigger the duty to consider in good faith. The Union also argues that under the terms of the Memorandum, the Company and the Union were bound to *negotiate* in good faith. The Union claims that this duty included the Company's duty to provide the cost information requested by the Union, which was allegedly essential to the Union's production of a viable incentive proposal.

Under the terms of the contract, the Company had the express duty to consider Union proposals in good faith and determine whether they had merit. Any duty to discuss or negotiate must also arise from the contract since duties arising under the labor statutes are not at issue here.

■ Whether the Company's duty to discuss was triggered depends upon whether the Company determined that the Union's letter of March 13 was a proposal with "merit." The district court apparently did not view the letter as a bona fide proposal

---

**1.** The context of the Memorandum here underscores the relevance of labor law principles. The Memorandum was entered into in order to provide both parties with the benefits from continuing operations and from the peaceful procedure for discussing future relations. *See* 29 U.S.C. § 141 (setting forth goals of labor policy).

Absent this Memorandum, statutory obligations may have required the Company to bargain in good faith as successor employer. *See NLRB v. Burns Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) (successorship doctrine).

under the Memorandum. *Daw Forest*, 643 F.Supp. at 124 ("bona fide proposal might not have been made"). Nevertheless, the district court found that the Company had in fact "engaged in good faith negotiations regarding an incentive program." *Id.* We conclude that even if the Company had the duty to discuss proposals with the Union, the Company did not violate this duty.

The Union contends that the Company breached its duties under the first clause by failing to supply the requested cost information. This duty, the Union contends, is based upon the Company's implied duty of good faith and fair dealing, a duty implied in every contract. *Comini v. Union Oil Co.*, 277 Or. 753, 756, 562 P.2d 175, 176 (1977). This duty requires that neither party will engage in any act " 'that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Perkins v. Standard Oil Co.*, 235 Or. 7, 16, 383 P.2d 107, 112 (1963) (quoting *Corbin* § 278). It also requires that neither party act to frustrate the object of that contract. *Warnock v. Bonneville General Agency, Inc.*, 271 Or. 634, 639, 533 P.2d 333, 335 (1975).

The Company argues that no duty to provide information existed. It contends that such a duty was never intended by the parties, as evidenced by the fact that under the contract's timetable of two weeks for the submission of a Union proposal, the Company, new to the logging business, could never have compiled this information. In addition, the Company argues that such information was not required for an acceptable proposal.

■ The question of whether a duty to provide information is part of the implied duty of good faith and fair dealing can only be answered in light of the factual setting of the Memorandum. The intent of the parties and the importance of the data to drafting a proposal are key to determining the existence of this duty. We therefore remand this issue to the district court. If such a duty is found, the court shall then determine whether it was breached, and if so, fashion an appropriate remedy.

## V.

The Union argues that the district court erred in finding that the second clause of the Memorandum was so ambiguous as to be unenforceable. This clause provides that the Company could retire equipment it felt was "inoperative, unsafe, or uneconomical to operate." The Union argues that the Company breached this second clause by its wholesale shutdown in March of 1985, since only piecemeal phase-out was contemplated by the Memorandum. The Union points to the wording of the third clause, which provides that the Company would attempt to reemploy loggers as "each employee becomes unemployed as a result of retirement of said equipment," and to the statements of the Company representative describing the second clause as requiring a piecemeal phase-out. The Company, on the other hand, argues that the second clause's reference to retirement of "logging equipment" allows for its complete shutdown.

The district court found that the contract language was ambiguous and that parol evidence did "not resolve this ambiguity." *Daw Forest*, 643 F.Supp. at 125. The court concluded that this ambiguity gave the Company such broad discretion that a breach could not be determined, and the clause was therefore unenforceable. *Id.* at 126.

■ We review the district court's conclusion that the clause is ambiguous de novo. *In re U.S. Financial Securities Litigation*, 729 F.2d at 632. While we agree that the language is ambiguous, we do not agree that resolving the ambiguity to allow for complete shutdown under specific circumstances gives the Company so much discretion that a breach cannot be determined.

The district court properly concluded that, based upon parol evidence, the clause allows the Company to retire all equipment if it was "inoperative, unsafe, or uneconomical to operate." *Daw Forest*, 643 F.Supp. at 125–26. The discretion of the Company is not so great, however, that its promise is illusory and therefore provides no consider-

ation. *Corbin*, §§ 145, 152; *Mattei*, 51 Cal. 2d at 122, 330 P.2d at 626. We must construe contracts to uphold them. *Purvis*, 344 F.2d at 870.

■ Where the terms of a promise limit the promisor's future freedom of choice, such that the promisor's future action is not left to "his own future will," the promise is not illusory and is therefore sufficient consideration. *Corbin*, § 145 at 627–28; *see, e.g., Pacific Pines Construction Corp. v. Young*, 257 Or. 192, 477 P.2d 894, 897 (1970) (restricted freedom of promisor was sufficient consideration). In light of this principle, we hold that the Company's promise is not illusory. The discretion of the Company was not unfettered; it could retire equipment only if it was "inoperative, unsafe, or uneconomical to operate." These conditions restrained Company behavior such that the Company's obligation under this clause constituted sufficient consideration.

On remand, the district court must decide whether the Company's shutdown of logging equipment based upon its estimation that it was "uneconomical to operate" because of the necessary expenditures was a breach of this clause. The implied duty of good faith and fair dealing provides additional guidance to the court in determining whether there was a breach.

### VI.

We therefore remand this case to the district court. In light of our conclusion that the Memorandum is enforceable, the court must determine: (1) whether a duty to supply the requested cost information may be implied under the first clause; (2) if so, whether this duty was breached; and (3) whether the wholesale shutdown of equipment was a breach of the second clause.

REVERSED and REMANDED.

### APPENDIX

### MEMORANDUM OF AGREEMENT

The following agreement by and between IWA Local Union No. 3–7 and the D.A.W. Company Employer at its Oregon Lumber Division, Bend Oregon, concerning the woods employees covered by the provisions of the Bend Woods Labor Agreement:

(1) The D.A.W. Company Employer agrees to consider in good faith, proposals presented by the International Woodworkers of America relative to a new "Working Agreement" effecting the woods employees referred to above. Said agreement to provide for the continuation of company logging, provided such "Working Agreement" is based on the ability of said logging unit to perform in a competitive basis with area Contract Loggers and can operate economically and efficiently. The Employer will consider the Union proposal which is to be submitted to the Employer within two (2) weeks following the signing of this agreement. If in the opinion of the Employer the proposal has merit, further discussions will be conducted within an additional two (2) weeks. Should the parties agree to a new "Working Agreement," such agreement will become effective immediately and continue to June 1, 1986.

If the Employer determines the proposal is without merit, the following procedure will take effect immediately:

(2) So long as the existing Company logging equipment remains operable, it is economically feasible to operate and can safely be utilized for logging, the Company will continue to maintain the operation. When in the opinion of the Company, the logging equipment is determined to be inoperative, unsafe or uneconomical to operate, it shall be retired and will not be replaced by the Company.

(3) As each employee becomes unemployed as a result of retirement of said logging equipment, the Company will make a reasonable effort to re-employ as many as possible of the qualified displaced logging employees in entry level jobs that occur in other operations of the Employer in the Bend–Redmond, Oregon area, consistent with the existing Collective Bargaining Agreements at said operations.

LEGGE, District Judge, dissenting:

I respectfully dissent. In summary, I conclude that the district court correctly

performed its duties of fact finding and contract interpretation. The language of the Memorandum of Agreement was obviously vague. The district court conducted a trial, with the essential issues being the history of the events and the intentions of the parties. The district court then made its decision on intent, and concluded that the Memorandum of Agreement was not intended "to be a binding contract." The court found the memorandum too vague to determine duty, breach, or remedy. I believe that the district court correctly applied the law, and that its findings of fact were certainly not clearly erroneously, the standard by which this appellate court must review those findings.

With respect to Clause One: The agreement by the Company was simply to "consider in good faith." The decisions were left to the unilateral discretion of the Company. After hearing the evidence of conduct and intent, the district court found that there was an absence of intent to make a contract, that the clause was too vague to be enforced, and that the determination of a remedy would be futile. Being grounded in the evidence presented at trial, the factual conclusions of the district court were not clearly erroneous. Whatever duties to negotiate may exist in other contexts, and whatever freedom to fashion remedies may exist in other cases, the district court determined after trial that those duties and remedies were not enforceable here.

Even if Clause One were certain enough to be enforced under applicable law, the district court also found that there was no breach. The obligation of the Company was to "consider." After trial the district court found that the Company had in fact "engaged in good faith negotiations." That finding of fact was not clearly erroneous from the evidence which the district court heard. The burden of proof on the issue of breach lay with the union, and the union's argument here is that the Company did not supply it with cost information necessary for the union to submit a proposal. But the memorandum of agreement says nothing about any obligation to submit information, only that the Company consider any proposals submitted by the union.

With respect to Clause Two: The clause provides that when "in the opinion of the Company," the equipment becomes "inoperative, unsafe, or uneconomical to operate," the operation can be shut down. Those matters were vested in the unilateral discretion of the Company. The district court found that the clause was ambiguous and took evidence in an attempt to resolve the ambiguity. The union had the burden of proof, and the district court determined after hearing the evidence that it could not determine that a breach had occurred. Its factual conclusion was correct and certainly not clearly erroneous.

I would affirm the decision of the district court.