**BRASPORT, S.A., Plaintiff,**

v.

**HOECHST CELANESE CORPORATION, Celanese International Marketing Company, Inc., Fiber Industries, Inc., and Ian Whittal, Defendants.**

No. 88 Civ. 3957 (RLC).

United States District Court, S.D. New York.

Jan. 24, 1991.

**46**

Coudert Brothers (Mark D. Lebow, Allen C. Wasserman, of counsel), New York City, for plaintiff.

Mayer, Brown & Platt (Marc E. Kasowitz, Daniel R. Benson, Jack Atkin, Walter E. Bard, of counsel), for defendants.

ROBERT L. CARTER, District Judge.

This case was tried before the court on May 1–3, 1990. The court dismissed all the claims of plaintiff Brasport, S.A. ("Brasport") and awarded judgment to defendants Hoechst Celanese Corporation, Celanese International Marketing Company, Inc., and Fiber Industries, Inc. (collectively "Celanese") and defendant Ian Whittal, a former employee of Celanese.[1] *Brasport, S.A. v. Hoechst Celanese Corp.*, 747 F.Supp. 199 (S.D.N.Y.1990) (Carter, J.). Celanese and Whittal now move for sanctions pursuant to Rule 11, F.R.Civ.P., requesting that their expenses and attorneys' fees be assessed against Brasport and its counsel. Defendants contend that Rule 11 sanctions are warranted in this case because there was no factual or legal basis for any of Brasport's claims.

Since familiarity with the court's earlier opinion is assumed, only a brief summary of the background facts is provided here. Prior to April 9, 1983, Armando Bachmann, S.A., was Celanese's sole representative in Argentina for the sale of various textile products. Juan Fabbri, who headed the textile department of Armando Bachmann, S.A., wanted Celanese to appoint him personally as its exclusive representative in Argentina, but Celanese was unwilling to do so unless Fabbri was associated with a company. In October, 1982, two Celanese executives met with Arthur Goldlust, chairman of the board of directors of a Brazilian corporation called Comexport. They discussed with Goldlust the idea of Comexport's forming a company in Argentina, to be headed by Fabbri, that would become Celanese's exclusive sales representative in Argentina. After Goldlust met with Fabbri in November, 1982, Brasport was formed as a wholly-owned subsidiary of Comexport and Fabbri was named Brasport's president. On or about April 9, 1983, Celanese entered into an exclusive representation agreement with Brasport.

In late 1986, Brasport commenced an investigation into Fabbri's activities. The investigation revealed that Fabbri had pocketed for his own use commission payments made by Celanese to Brasport, had taken government bonds from Brasport's safe, had established his own companies, to which he had diverted business, and had double-billed Brasport for his business expenses. Fabbri was removed from his position as Brasport's president in April, 1987, but did not leave Brasport's employ until July, 1987. On July 28, 1987, Celanese informed Brasport that it would exercise its option to terminate its representation agreement with Brasport. The agreement was terminated on or about October 27, 1987.

Brasport brought suit against the defendants in June, 1988, alleging that Celanese had breached the representation agreement by failing to pay Brasport commissions due and by making direct sales of its products to buyers in Argentina; that Celanese and Fabbri had conspired to divert customers, commissions and business opportunities from Brasport to Fabbri; that Whittal had interfered with, and induced the breach of, the representation agreement; and that defendants' breach of their fiduciary duty entitled Brasport to an accounting.

## DISCUSSION

As articulated by the Second Circuit,

the language of ... Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.... [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that

---

1. Also, at the onset of trial, the court dismissed Whittal, without objection, as a defendant in this action for lack of subject matter jurisdiction.

the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985) (emphasis in original), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

■ In making this determination, the court must evaluate whether an attorney met his obligation under Rule 11 as of the time he signed the pleading, *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), as measured by an objective standard of reasonableness under the circumstances. *Eastway Constr. Corp., supra*, 762 F.2d at 253. In so doing, the court "must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed," *id.* at 254, and must resolve any and all doubts in favor of the signer. *Id.* Thus, in order to find a Rule 11 violation, it should be "patently clear" to the court that a claim had "absolutely no chance of success." *Id.; see, e.g., Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *Healey v. Chelsea Resources, Ltd.*, 132 F.R.D. 346, 352 (S.D. N.Y.1990) (Carter, J.).

■ Brasport abandoned its cause of action for an accounting at the onset of trial, and ultimately failed to prove the other causes of action interposed in its original complaint. Prior to commencing this lawsuit, however, both Brasport and its counsel conducted inquiries into the matters that gave rise to the litigation, yet their inquiries were apparently impeded by the fact that they were not in possession of records concerning various transactions with the defendants. Brasport and its counsel could have reasonably believed that information and documentation revealed through the discovery process would fully substantiate Brasport's claims. *See Monarch Ins. Co. v. Insurance Corp. of Ireland*, 110 F.R.D. 590, 594–95 (S.D.N.Y. 1986) (Carter, J.). Resolving all doubts in

favor of Brasport and its counsel, the court concludes that it was not completely unreasonable for them, at the time they filed the complaint, to believe that Brasport's initial claims against Celanese and Whittal were colorable.

■ In addition, at the trial, the court granted Brasport's motion to amend its pleadings to conform to the evidence. *See* Rule 15(b), F.R.Civ.P. Through its pre-trial memorandum, its pre-trial proposed findings of fact and conclusions of law, its contentions section of the pre-trial order, its presentation at trial and its post-trial memorandum, Brasport sought to establish three claims. First, Brasport argued that Celanese breached its duty in failing to disclose negative information about Fabbri, and that Celanese must therefore compensate Brasport for damages caused by Fabbri's wrongdoing. Second, Brasport contended that Celanese was liable for the numerous commission payments that it had already made to Brasport by check but that were wrongfully pocketed by Fabbri. Finally, Brasport claimed that Celanese breached its exclusive representation agreement with Brasport in failing to pay commissions to Brasport on sales made to a Brasport customer named Coafi, S.A.

The evidence offered and legal arguments propounded by Brasport to support these new claims were certainly very weak. Brasport and its counsel came perilously close to violating Rule 11 by advancing such weak claims. Nevertheless, it is not patently clear to the court that the claims had absolutely no chance of success. With respect to the first of these, Brasport showed that Celanese executives had praised Fabbri very highly and that Brasport had relied considerably on these recommendations in deciding to appoint Fabbri to head its operations. Brasport then argued that Celanese's non-disclosure of information about Fabbri's misconduct at his prior place of employment was a breach of duty, making Celanese liable for the losses Brasport sustained as the victim of Fabbri's theft of government bonds, diversion of product, and double-billing of expenses.

This claim hinged largely upon the testimony of Brasport's witness Felix Bachmann, chief executive officer of Armando Bachmann, S.A. Felix Bachmann testified that, in February, 1983, he warned Celanese officials that Fabbri had engaged in various illicit activities during his tenure at Armando Bachmann, S.A. Brasport's other witnesses established, however, that Celanese recommended Fabbri to head Brasport in October, 1982, and that Brasport appointed Fabbri its president in November, 1982. On that basis, the court found that even if Bachmann's testimony were true, Celanese could not be held responsible for failing to inform Brasport of something it did not know at the time it recommended Fabbri to Brasport.

Defendants make much of this finding by the court in arguing that Brasport's first new claim had absolutely no basis in fact or in law. They overlook Brasport's argument that Celanese's duty to disclose any negative information about Fabbri extended beyond the time at which Celanese first recommended him to Brasport, at least until the execution of the exclusive representation agreement between Celanese and Brasport in April, 1983. This argument was unsuccessful primarily because Brasport failed to prove the threshold fact that Celanese did indeed obtain negative information about Fabbri.

Central to this factual finding was the court's determination that Bachmann's testimony regarding his alleged warning to Celanese lacked credibility, in light of his other testimony as well as opposing testimony by the two Celanese officials whom Bachmann claimed to have warned. However, it was at least conceivable that the court would find in favor of Bachmann's version of the facts. If Brasport had prevailed on this threshold issue, its breach of duty claim would have been more meritorious. Under these circumstances, the court concludes that Brasport and its counsel should not be sanctioned under Rule 11 for interposing and continuing to press this claim. See Monarch Ins. Co., supra, 110 F.R.D. at 593 (failure to establish claims at trial "is not the equivalent of a finding that [they] were totally without foundation or absolutely without a chance of success").

The second of Brasport's new claims was also not clearly frivolous. Brasport asserted that Celanese's significant role in the appointment of Fabbri as head of Brasport rendered Celanese responsible for Fabbri's unauthorized diversion of the commission checks. The court rejected this argument because it found that "[t]he real cause of [Brasport's] exposure to Fabbri's fraudulent activities was its own negligence in failing to monitor Fabbri's activities." Brasport, S.A. v. Hoechst Celanese Corp., supra, 747 F.Supp. at 203. Thus, the court saw no reason to depart from the well-established rule that "[a] debtor's obligation to its creditor is discharged when a check payable to the creditor is sent to the creditor or its authorized agent, even though wrongfully endorsed by the agent or the latter absconds with the proceeds." Id. (citations omitted).

Brasport argued that this rule, imposing the risk of loss on the creditor for its own agent's mistakes or misdeeds, is predicated on the rationale that it is normally the creditor who selects its agent and is primarily responsible for placing the agent in a position to commit any wrongs. Brasport contended that, in this case, Celanese should bear the risk of loss, since, in Brasport's view, Celanese had been the one to select Fabbri to be Brasport's agent and Celanese had been more responsible than Brasport for placing Fabbri in a position in which he could perpetrate the diversion of the check payments.

While unpersuasive, Brasport's evidence regarding Celanese's recommendation of Fabbri did constitute some factual basis for this contention. Brasport and its counsel were within reasonable bounds in thinking that they would be able to establish Celanese's superseding responsibility for Brasport's appointment of Fabbri and that they could thereby make a good faith argument for the extension or modification of existing law. See Eastway Constr. Corp., supra, 762 F.2d at 254 (Rule 11 is not intended "to stifle the enthusiasm or chill the creativity that is the very lifeblood of the

law"); *see also McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 22 (2d Cir.1990) (same).

As for Brasport's remaining claim—for breach of contract with respect to commissions on Celanese's sales to Coafi—Celanese's own witness, João Paulo Camargo de Toledo, established at trial that no commissions on those sales were paid to Brasport. Brasport did not ultimately prevail on this claim, however, because Celanese succeeded in proving the existence of an oral agreement waiving Brasport's right to the Coafi-related commissions. Camargo de Toledo testified that Fabbri, as Brasport's representative, had agreed to waive the commissions, since Coafi was a new customer and the promotional price for those sales had been set at a bare minimum. In addition, there was documentation by way of export permits reflecting the oral waiver.

There is nothing to indicate that Brasport, before interposing this claim, had any knowledge of the oral waiver that Fabbri had agreed to as its representative. Moreover, prior to commencement of this action, Celanese's associate general counsel had written to Brasport that "[s]ales were made to ... Coafi S.A. in the regular course of business and commissions were paid to Brasport." Plaintiff's Exhibit 26. According to Brasport, such a statement would not have been made had Brasport's representation agreement with Celanese been modified to waive Brasport's commissions on the Coafi sales. Thus, Brasport had some grounds for maintaining that it was entitled to those commissions. Accordingly, this claim does not warrant Rule 11 sanctions.

In support of their motion, defendants rely on this court's recent decision in *Healey, supra,* 132 F.R.D. at 353–54, to impose Rule 11 sanctions on the plaintiff and his counsel. *Healey,* however, involved "more than a failure of proof at trial to establish any of the claims made. The proof clearly showed that Healey had no basis for making his claims and that he must have known that he instituted bogus litigation." *Id.* at 350. In contrast, Brasport's claims, as discussed above, were at least arguable claims which had some minimal basis in fact and in law but which were dismissed after trial for failure of proof. Furthermore, in *Healey,* there was strong evidence that the action had been brought in bad faith. The court was convinced that Healey had initiated the suit with the deliberate intent to blackmail the defendants into paying him off. *Id.* at 353. No such indicia of an improper purpose were present in this case.

One final matter remains to be addressed. During the course of the trial, defendants first became aware that Brasport had not turned over a report that Felix Bachmann had written and provided to Brasport in 1988, the books and records examined by Montero, Nunez & Associates in reviewing Brasport's financial statements, and 12 ledgers that recorded all of Brasport's financial transactions. In their post-trial memorandum of law, defendants asserted that Brasport's failure to produce these documents mandated dismissal of all of its claims. The court declined to decide this issue because it held in favor of defendants on the merits. Defendants now contend that Brasport's failure to produce these documents also supports their motion for Rule 11 sanctions.

Even if Brasport did in fact violate its discovery obligations in failing to produce these documents, Rule 11 is not implicated. Rule 11 addresses the submission of frivolous or improperly motivated pleadings, motions or other papers in a lawsuit, while other provisions in the Federal Rules of Civil Procedure directly address failures to comply with discovery obligations. *See* Rules 26, 37, F.R.Civ.P. *Cf. McMahon, supra,* 896 F.2d at 22 (Rule 11 "does not license a district court to sanction any action by an attorney or party that it disapproves of") (citations omitted).

## CONCLUSION

For the foregoing reasons, defendants' motion for sanctions pursuant to Rule 11, F.R.Civ.P., is denied.

IT IS SO ORDERED.