MID-ATLANTIC CONSTRUCTION CORP., Respondent, *v.* LAWRENCE GUIDO, Doing Business as WHITESTOWN CONSTRUCTION CO., et al., Defendants, and NEW HARTFORD PLAZA, INC., et al., Appellants.

M. M. MARSHALL Co., INC., et al., Respondents, *v.* NEW HARTFORD PLAZA, INC., et al., Appellants.

Fourth Department, June 27, 1968.

*Ferris, Kehoe, Tenney & Murnane* (*Richard O'C. Kehoe* of counsel), for New Hartford Plaza, Inc., and others, appellants.

*W. Roger Pratt* for M. M. Marshall Co., Inc., and others, respondents.

*Calli, Calli & Palewski* for Mid-Atlantic Construction Corp., respondent.

GOLDMAN, J. P.   Plaintiffs M. M. Marshall Co., Inc., Morris Marshall and Robert L. Lazovitz (called General Contractor) entered into a contract with defendants New Hartford Plaza, Inc., Loomis J. Grossman and Betti S. Grossman, as trustees, Richard A. Grossman, Loomis J. Grossman, Jr., and Robert C. Baker (called Owners) for the construction of a shopping center in the Town of New Hartford, New York.   The agreement was prepared on the American Institute of Architects " Standard Form of Agreement Between Contractor and Owner For Construction of Buildings ".

The work commenced in April of 1963 and in May the Owners complained about the lack of progress. The disputes continued until November when sharp differences arose between the Owners and the General Contractor. In January of 1964 the General Contractor stopped work and the Owners served a notice of termination. On January 22, 1964 the General Contractor commenced action against the Owners to recover damages for fraud in the inducement and in the performance of the contract and for payment for extra work and for the unpaid balance of the agreed price. On the institution of this action, the Owners on February 7, 1964 served notice of intention to arbitrate, pursuant to article 40 of the contract, and initiated arbitration proceedings before the American Arbitration Association. There then proceeded a series of motions made before various Justices which led to confusion and complications which unfortunately continued throughout all of the litigation.

The Owners moved to dismiss the fraud causes of action and for a stay of further proceedings pending the determination of the arbitration proceedings. Special Term, by order dated April 8, 1964, dismissed the first and second causes of action which embodied the fraud allegations and stayed the prosecution of the Supreme Court action "until arbitration has been had in accordance with the terms of the contract referred to in said complaint". Upon reargument of this motion, Special Term reaffirmed its original order and granted plaintiffs leave to serve an amended complaint restating the fraud allegations. There followed various motions for stays, dismissal of causes of actions and other matters. During these maneuvers, the Owners filed their claim in arbitration, the General Contractor filed its answer and arbitrators were designated. While these preliminary matters were proceeding, various mechanics' liens were filed by subcontractors and the mechanics' lienors were impleaded. From that point the various actions contained all of the parties who are involved in these appeals.

By order dated January 11, 1965 Special Term vacated a stay of arbitration contained in an order to show cause and directed "that the arbitration * * * commenced by service of the said notice of intention to arbitrate served on the 7th day of February, 1964 shall continue". Thus, at this stage of the proceedings there were outstanding the orders of April 8, 1964 and January 11, 1965 which stayed the trial of the actions and directed the parties to continue the arbitration proceedings. On March 3, 1965 all of the parties entered into a stipulation by which they agreed " that the conduct of the preparation for trial and the trial of the actions shall be referred to a Judge desig-

nated by the Appellate Division * * *. All matters as to the trial of the actions, including motions addressed to the pleadings or otherwise, shall be determined by said designated Judge." The stipulation further provided " that the stay of arbitration now pending before the American Arbitration Association between the owners and the general contractor shall be continued subject to the right of any party hereafter upon notice to all other parties to move to vacate the said stay ". As indicated above, there was in fact no stay of arbitration in existence at the time of the stipulation, for there were outstanding the two orders staying the trial and directing the continuance of arbitration, from which orders no appeals were taken. On March 31, 1965 the Justice selected by the Appellate Division to hear all matters in connection with these actions signed an order to show cause upon the application of the Owners which in part sought a dismissal of the first and second causes of action dealing with fraud and further requested " that in the event the issues with respect to fraud in the inducement of said contract is determined in favor of the owners in such separate trial that the issues relating to the balance due on the contract of April 2, 1963 be determined in the arbitration proceeding now pending ". By the order dated April 13, 1965, the same Justice who granted the order to show cause denied it in all respects and ordered the parties to commence trial of the issues. A notice of appeal from this order was filed the same day it was made. The next day, at the beginning of the trial, counsel for the Owners made the following statement: " I would point out to you that the contract action is stayed by order of Judge Ringrose and it has not been vacated ". The court then indicated that " It was my understanding that these actions, notwithstanding the fact that one of them is in arbitration, were to proceed to trial together ". The court further reminded counsel " that doesn't foreclose the owners from taking an appeal ". The court then indicated that he would sign another order denying the Owners' request to stay the trial and to continue arbitration and ordered the parties to proceed to trial the next morning. At the beginning of the trial Owners' counsel again urged that a stay of the trial was outstanding and the court again denied the motion and stated " We will proceed with the proof ".

The trial then commenced and various parties presented much testimony as to the fraud causes of action. After several days of trial Owners' counsel moved to dismiss the fraud causes of action and the court ruled that " The motion of the defendant owners to dismiss the causes of action in fraud both in the contractors' action and in the cross claims and answers of the

certain of the defendant lienors is granted, both as to the agreement of — the original agreement of April 2, 1963, and as to the agreement of December 6, 1963.''

These allegations of fraud at any stage of the business relationship among General Contractor, Owners and subcontractors are unsupported both by the evidence and the testimony, particularly with reference to the circumstances which led to the basic contract of April 2, 1963 and the ''inducing'' contract of December 6, 1963. There is no testimony of an actual misrepresentation. The abnormal water conditions were self-evident (among other items, a brook running through the site and land adjacent to the site sloping down toward it) and were discussed prior to the execution of the contract. Owners had no duty to disclose its private soil test borings (*Johnson, Drake & Piper* v. *New York State Thruway Auth.*, 22 A D 2d 321; *Niewenhous Co.* v. *State of New York*, 248 App. Div. 658, affd. 272 N. Y. 484; 1 New York Law of Contracts, § 159, p. 210). The General Contractor's reliance on *Jackson* v. *State of New York* (210 App. Div. 115, affd. 241 N. Y. 563) and cases cited in its brief is unwarranted for the reason that, unlike these, in the case at bar there was no misrepresentation and there was no duty to disclose. In any event, there was no attempt at rescission upon the discovery of the facts (24 N. Y. Jur., Fraud and Deceit, § 97).

We affirm the court's determination of the fraud issue. At this point in the trial the court, having held the contract valid in all respects, was duty bound to have granted the several motions which counsel for the Owners made to stay the balance of the trial and to direct the continuance of arbitration (*Matter of Carey* [*Westinghouse Elec. Corp.*], 6 A D 2d 582, 583). We, therefore, reverse that part of the order appealed from, dated April 13, 1965, which denied the Owners' motion to dismiss the first and second causes of action contained in the amended complaint and that part of the order which denied the motion to send all of the other issues to arbitration. Article 40 of the General Conditions of the Contract provides in part: ''All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other.'' The Owners had an

absolute right to arbitration under the contract with the General Contractor. As was said in *Matter of United Paper Mach. Corp.* (*Di Carlo*) (19 A D 2d 143, 144): "We must start, of course, with the declared policy of the law dealing with arbitration matters as enunciated in *Matter of Grayson-Robinson Stores* (*Iris Constr. Corp.*) (8 N Y 2d 133) where Chief Judge DESMOND wrote (p. 138): 'Arbitration is by consent and those who agree to arbitrate should be made to keep their solemn, written promises. Such is New York State's public policy, plainly written in article 84 of the Civil Practice Act. The courts should follow a "liberal policy of promoting arbitration both to accord with the original intention of the parties and to ease the current congestion of court calendars" (*Lawrence Co. v. Devonshire Fabrics*, 271 F. 2d 402, 410).' The same principle is expressed in *Matter of Exercycle Corp. (Maratta)* (9 N Y 2d 329, 333–335) which contains a fine compilation of cases dealing with arbitration." CPLR 7503 (subd. [c]) provides in part that where notice of intention to arbitrate has been served "that unless the party served applies to stay the arbitration within ten days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with". There is nothing in this record to indicate that such action was taken by the General Contractor after the notice to arbitrate was served upon them. It acquiesced in the proceeding by filing an answer to the claim and by agreeing upon arbitrators. "The right to a stay of arbitration will be considered waived where a party participates in the designation of arbitrators" (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7503.23; *Matter of Leonard* [*Heinemann*], 35 Misc 2d 421, and cases cited therein; *Matter of Unicon Mgt. Corp.* [*Pavcrete Constr. Corp.*], 23 A D 2d 837).

Article 37, which deals with relations of contractor and subcontractor, binds the subcontractor to the terms of the prime contract and the General Conditions of the Contract and defines the subcontractor's rights in arbitration. These provisions bind the owners, general contractor and all subcontractors who agreed to be bound by the prime contract to resolve any disputes in arbitration. It is impossible from the record and exhibits before us to determine with certainty which of the subcontractors signed written agreements which required them to resort to arbitration and which subcontractors had no knowledge of the arbitration requirement. Such subcontractors, if any, who did not agree to arbitrate their differences may not, if the facts make it unfair to do so, be required to submit their claims to arbitration (*Matter of Riverdale Fabrics Corp.* [*Tillinghast-*

*Stiles Co.*], 306 N. Y. 288; *Matter of Hosiery Mfrs. Corp.* v. *Goldston*, 238 N. Y. 22, 28; *Matter of Dana Realty Corp.* [*Cons. Elec. Constr. Co.*], 21 A D 2d 769, 770).

In the exercise of sound discretion and as a practical matter a court may stay the trial of the claims of the subcontractors where the principal issues are subject to arbitration, as here between the Owners and General Contractor, for determination of those issues may likely bring about a solution of all of the disputes. Even though some of the subcontractors may not be bound under the prime contract and therefore may not have agreed to the arbitration provision, in the exercise of our discretion we stay the trial of the rights of those subcontractors '' to avoid the simultaneous prosecution of the action and the arbitration proceeding, both of which involve the same controversy '' (*Flash* v. *Goldman*, 278 App. Div. 829; *Bartley Bros. Constr. Corp.* v. *National Sur. Corp.*, 280 App. Div. 798; *Lake Beechwood Country Club* v. *Peekskill Manor*, 2 A D 2d 865). It seems quite clear that the determination by the arbitrators of the issues between the Owners and the General Contractor will resolve all disputes of the subcontractors. Any subcontractors who wish may, of course, present their disputes to the arbitrators for resolution.

The judgments appealed from should be reversed, further trial of any of the issues should be stayed and the parties should continue the arbitration proceedings now pending.

DEL VECCHIO, MARSH, WITMER and HENRY, JJ., concur.

Judgments in the first and second above-entitled actions, dated April 18, 1967 unanimously reversed on law and facts, without costs in accordance with opinion by GOLDMAN, J. P.