OPINION OF THE COURT
Stephen G. Crane, J.
These proceedings to stay arbitrations present common issues. Primarily, these are: what constitutes participation in arbitration; and can jurisdiction be obtained over a claimant simply because he or she agreed to arbitrate pursuant to the rules of a tribunal located in New York. These proceedings are consolidated for purposes only of this opinion.
*14 KIDDER PEABODY PROCEEDING
Petitioners (hereafter Kidder Peabody) are a broker-dealer and its account representative with respect to a securities brokerage account maintained for respondent Donna L. Marvin (Marvin) at the Ft. Lauderdale, Florida, office of Kidder Peabody. This account was opened in December 1986 and was closed in September 1988. The relationship between Marvin and Kidder Peabody was governed by a Securities Account Agreement. It provided for arbitration: "Any controversy between us * * * arising out of or relating to accounts of or transactions with or for me (Marvin) or to this or any other agreement between us shall be settled by arbitration * * * Any arbitration between us shall be conducted in accordance with the rules then in effect of the National Association of Securities Dealers Inc. or of any exchange of which you (Kidder Peabody) are a member, as I may elect”. The Securities Account Agreement also specified that the agreement and its enforcement would be governed by the laws of the State of New York.
Marvin invoked the arbitration provision on December 18, 1992, by filing a claim with the National Association of Securities Dealers Inc. (NASD) at 33 Whitehall Street, New York County. She claimed damages due to unsuitable investing and excessive trading in her account. On March 3, 1993, and March 11, 1993 Kidder Peabody and Marvin agreed to extend its time to answer, move or otherwise respond to Marvin’s statement of claim to give Kidder Peabody a chance to consult with the broker. Nothing happened until August when NASD scheduled a November hearing in Ft. Lauderdale. Kidder Peabody responded to NASD on August 26, 1993, that it would check on the availability of its attorney and requested an extension to respond to the proposed dates. In October Marvin moved before NASD to bar Kidder Peabody for failing to answer the statement of claim. Then, by order to show cause dated October 12, 1993, containing an interim stay of arbitration, Kidder Peabody brought on this proceeding, inter alla, to stay arbitration on grounds of the bar of limitations. Marvin cross-moved under CPLR 3211 (a) to dismiss for lack of in personam jurisdiction.
SMITH BARNEY PROCEEDING
Again, petitioners (hereafter Smith Barney) are a broker-dealer and an account representative this time with respect to *15 a securities brokerage account maintained for respondents as fiduciaries for the estate of Nat Gold (Gold) at a Florida office of Smith Barney. This account was opened by Gold and respondents, his daughters, all as trustees. The date of inception is not revealed. The account was governed by a "Vantage Account Agreement Fiduciary Accounts.” It provided for arbitration of all controversies with Smith Barney or its employees arising out of this account before the NASD, the New York Stock Exchange, the American Stock Exchange "or any recognized arbitration facility provided by any exchange,” the choice among which initially belonging to the customers. The account agreement stipulated that New York law, other than its rules on conflict of laws, would govern all its terms.[1]
Respondents invoked the arbitration provision by filing a statement of claim on December 31, 1992 at the offices of the NASD in Ft. Lauderdale, Florida, and at 33 Whitehall Street, New York, New York. They claimed damages stemming from a variety of investments made between September 1984 and July 1986.
The statement of claim was served on Smith Barney around March 17, 1993. Smith Barney then moved[2] under section 15 of the NASD Code of Arbitration Procedure to bar arbitration. The Director of Arbitration ruled on May 21, 1993, that "claims regarding all purchases will be permitted to go to the Panel, but only as to allegations of wrongdoing occurring after September 21, 1986. All allegations of wrongdoing occurring prior to that date are barred.”[3] Thereafter, in accordance with the NASD Code the arbitrators were appointed and hearing dates fixed for December 14, 1993 at Ft. Lauderdale.[4] The parties were advised of these facts on September 7, 1993. *16 Then, by order to show cause dated November 8, 1993, Smith Barney applied to stay arbitration on grounds of the bar of section 15 of the NASD rules and the applicable Statutes of Limitation. Respondents cross-moved to dismiss the petition pursuant to CPLR 3211 (a) for lack of in personam jurisdiction.
COMMON ISSUES
(a) Participation in the Arbitration
CPLR 7503 (b) authorizes an application to stay arbitration by "a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration.” The respondents in each of the proceedings at bar argue that the petitioners have participated in their respective arbitrations.
Clear cases of participation in arbitration are presented when a party engages in the selection of the arbitrators. (Matter of Boston Old Colony Ins. Co. [Martin], 34 AD2d 776; Mid-Atlantic Constr. Corp. v Guido, 30 AD2d 232, 237; Milton L. Ehrlich, Inc. v Swiss Constr. Corp., 11 AD2d 644.) The right to litigate is not preserved by reserving a right to contest the arbitrability of a claim while participating in the hearings before the arbitrator. (Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 381; Matter of Government Empls. Ins. Co. [Johnston], 72 AD2d 892; Hodges Intl. v Rembrandt Fabrics, 44 AD2d 77, 78-79.) It was also held to be participation in arbitration when the party resisting the claim wrote the arbitrator asserting the irrelevance of specified material and contesting the arbitrator’s right to issue a subpoena. (Matter of Unicon Mgt. Corp. v Pavcrete Constr. Corp., 23 AD2d 837, cited in Siegel, NY Prac § 595, at 958 [2d ed].) At bottom, it can be said that as long as a party’s actions are consistent with the right to litigate arbitrability, there is no waiver. (Cf., DeSapio v Kohlmeyer, 35 NY2d 402, 405.)
Consistent with this view of preservation, the following cases illustrate activity that will not be considered participation. (Matter of Dana Realty Corp. [Consolidated Elec. Constr. Co.] 21 AD2d 769 [request for extension of time to select arbitrators not "participation” in view of protest to arbitrability and announced intention to seek a stay];[5] Hull Dye & Print *17 Works v Riegel Textile Corp., 37 AD2d 946 [no participation where stay sought before answer was interposed, before list of arbitrators was submitted and before extension of time to make selection was granted].)
Most informative, however, for purposes of the cases at bar is Matter of De Laurentiis (Cinematografica de las Ams.) (9 NY2d 503, 508-509). There the Court of Appeals disagreed with the courts below on the issue of participation: "The holdings below that petitioner so participated that he can no longer contest the validity of the agreement nor the arbitrability of the dispute were based on a series of letters written on behalf of petitioner to respondents’ representatives in June, July and August, 1960, after receipt by Serpe, petitioner’s designated representative, of respondents’ demand for arbitration. We do not think that the mere requests by petitioner’s agent Serpe for extensions of time were 'participation’ in the arbitration * * * Reasonably read, the various applications made by Serpe were no more than successive requests for time to allow petitioner to decide whether to participate in the selection of arbitrators and in the arbitration proceedings or to begin court proceedings for a stay * * * At the time these letters were written neither party had done anything about selecting the arbitrators.”
Applying the teaching of the foregoing authorities to the proceedings at bar, the court holds that Smith Barney participated in arbitration but Kidder Peabody did not.
(i) Kidder Peabody
Kidder Peabody received extensions of time to answer or otherwise respond to the statement of claim. It never answered, a circumstance that Marvin used in October to move before the NASD for preclusion. When the Director of Arbitration scheduled dates for the hearing, Kidder Peabody requested an extension of time to confirm the dates to check on *18 the availability of its attorney. It then commenced this proceeding. Nothing in the conduct of Kidder Peabody constituted participation in the arbitration. Requests for extensions of time do not qualify. (Matter of De Laurentiis [Cinematografica de las Ams.], supra; Matter of Dana Realty Corp. [Consolidated Elec. Constr. Co.J, supra.) And, withholding an answer to the statement of claim is the antithesis of participation. (See, Mid-Atlantic Constr. Corp. v Guido, 30 AD2d 232, 237, supra.) These actions of Kidder Peabody certainly lack the characteristic of being inconsistent with the right to litigate. (DeSapio v Kohlmeyer, supra.)
The circumstance that arbitrators have been selected and a location and dates have been chosen for the hearings cannot be attributed to the participation of Kidder Peabody. These are functions the Director of Arbitration performs in any case.[6] (See, n 4, supra.) Thus, the cases declaring participation in the selection of arbitrators to be a waiver of the right to resort to court (e.g., Matter of Boston Old Colony Ins. Co. [Martin] supra; Milton L. Ehrlich, Inc. v Swiss Constr. Corp., 11 AD2d 644, supra) are not particularly helpful in arbitrations before the NASD or NYSE. That is not to say, however, that a petitioner’s prior interaction with the NASD Director of Arbitration by filing an answer or seeking some affirmative relief will not amount to "participation.”
The most that can be said for Marvin’s argument of waiver by participation is that Kidder Peabody allowed nine months to pass before seeking a stay and that it announced in its last letter an intention to file an answer to the statement of claim, thereby implying that it would participate in the arbitration. As stated earlier, the failure of a party opposing arbitration to announce its intention to seek a stay in court is but one factor in determining participation in the arbitration or the lack thereof. (See, n 5, supra.) As the court in De Laurentiis (supra, at 509) stated, "[i]t would be unfair to construe careless language * * * to mean that petitioner was agreeing to go forward in the arbitration.” In any event, the words do not control, but the petitioner’s actions and the context in which *19 it used those words determine whether it has waived the right to seek a stay. Words did not save those participants in arbitration that contested arbitrability in the cases cited in footnote 5 (supra).
(ii) Smith Barney
Neither party informs the court whether Smith Barney has answered the statement of claim. (See, n 2, supra.) It is petitioner’s burden to establish that it did not participate in the arbitration. Whether or not Smith Barney filed an answer, however, it did seek from the Director of Arbitration the same relief it now seeks from the court — dismissal of respondents’ claims as barred by NASD § 15. Indeed, Smith Barney was successful in part on that application! Given the structure of the NASD arbitration procedure and the role of its Director of Arbitration (see, 17-18 and nn 4, 6, supra), this activity of Smith Barney is not different in substance than the actions of petitioners who ask the arbitrators themselves to recognize their contentions of nonarbitrability. (See, e.g., Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 381, supra; Matter of Government Empls. Ins. Co. [Johnston], 72 AD2d 892, supra; cf., Hodges Intl. v Rembrandt Fabrics, 44 AD2d 77, 78-79, supra; Matter of Unicon Mgt. Corp. v Pavcrete Constr. Corp., 23 AD2d 837, supra.) This action alone that Smith Barney took some six months before moving in court to stay arbitration suffices to establish a waiver of the right to litigate. (Cf., DeSapio v Kohlmeyer, supra.)
(b) Jurisdiction over Respondents
The respondents contend that this court lacks personal jurisdiction over them and that their mere resort to the NASD, with a principal office in New York, is insufficient to bestow such jurisdiction. They ask this court to reverse its holdings in Merrill Lynch, Pierce, Fenner & Smith v Sheets (index No. 26364/92, Apr. 6, 1993) and Merrill Lynch, Pierce, Fenner & Smith v Ferguson (index No. 22486/92, Jan. 26, 1993). They prefer the contrary rulings on this point of my colleagues, Hon. Martin Stecher in Merrill Lynch, Pierce, Fenner & Smith v Samples (index No. 13129/92, Dec. 14, 1992), Hon. Peter Tom in Merrill Lynch, Pierce, Fenner & Smith v Renko (index No. 10758/92, Dec. 18, 1992) and Hon. Alice Schlessinger in Prudential Sec. v Cohn (index No. 113576/93, July 2, 1993).
This court in Sheets and Ferguson (supra) held that where a *20 contract clause requires arbitration before NYSE or NASD, the parties are consenting to jurisdiction of New York courts in relation to that arbitration, citing, in Sheets (slip opn, at 2), Merrill Lynch, Pierce, Fenner & Smith v Lecopulos (553 F2d 842, 844 [2d Cir 1977]) and Siegel, NY Prac §§ 588 and 591 (at 940, 950 [2d ed 1991]). Justice Stecher in Samples (supra) rejected this approach in an NASD arbitration. He found Lecopulos inapposite[7] because the agreement before him in Samples did not provide for arbitration in New York, but only that the arbitration would be governed by the NASD Code. Indeed, the Director of Arbitration in Samples selected Arizona as the locale of the arbitration. The court remitted the parties to the courts of Arizona. Justice Stecher reasoned: "Respondent’s only contacts with New York are those connected with the filing of the demand for arbitration. Neither the Customer Agreement nor the Code specify any location for arbitration. The claimant is directed to mail all documents to the Director of Arbitration, wherever that may be. That the Director’s address is in fact in the New York City office of the NASD is too incidental to support jurisdiction.” (Slip opn, at 7.)
Likewise, in Renko (supra), Justice Tom (now of the Appellate Division, First Department) rejected as the basis of New York jurisdiction a similar provision that arbitration would be conducted pursuant to NYSE rules or the NASD Code. Noting that the Renko arbitration would be heard in Ft. Lauderdale, he found that respondent’s resort to the NASD was not the choice of a New York forum. He, like Justice Stecher, distinguished Lecopulos (supra), but on the ground that Renko had a choice between NYSE and NASD whereas in Lecopulos arbitration had to be accomplished pursuant to rules of NYSE which is headquartered in New York City, and NASD is not. (NASD headquarters is in Washington, D.C.) Justice Tom found New York jurisdiction lacking because the agreement nowhere mentions the place of arbitration, and the claimant requested a hearing in Florida.
Finally, in Prudential Sec. v Cohn (supra), Justice Alice Schlesinger adopted the reasoning of Justice Stecher in Samples (supra). Her conclusion rejected the voluntary nature of filing the statement of claim with the Director of Arbitration *21 of NASD in New York as fortuitous in view of the fact that the Cohn claimants requested a hearing not in New York but in San Diego.
This court has restudied the issue and remains of the opinion that by commencing arbitration with the New York office of the NASD, the respondents bestowed jurisdiction on New York courts to entertain applications to stay these very arbitrations. Professor David D. Siegel put it characteristically well in his treatise, New York Practice (§ 591, at 950 [2d ed]): "All of this discussion of venue assumes that the court has personal jurisdiction over the respondent against whom the proceeding is brought. In determining whether it has, the court should be able to apply the same jurisdictional principles that govern in an action — including longarm jurisdiction under CPLR 302 and any other basis that would avail in an action. This is not often a problem. Presumably, if no party has a residential or business nexus with the state, the agreement itself will specify New York as the situs of the arbitration or subscribe to rules that would permit the arbitrator to, and that by itself should suffice as a kind of consensual submission to the jurisdiction of a New York court to determine arbitrability issues. And it would supply personam jurisdiction.” (Emphasis added.) Professor Siegel elaborates (§ 588, at 940) that CPLR 7502 (a) bestows jurisdiction to compel arbitration "without any stated New York contacts at all, but a showing of at least a minimal New York nexus — sufficient in any event to justify the limited exercise of judicial jurisdiction needed to get the arbitration started (or stopped) — will avoid due process objections.”
In accord with this view of jurisdiction is the Second Circuit Court of Appeals. In Merrill Lynch, Pierce, Fenner & Smith v Lecopulos (553 F2d 842, supra), the plaintiff had sued its London office’s customer, a Greek citizen, and later moved to stay its action pending arbitration under the Constitution and rules of NYSE or, if relating to a transaction executed on an exchange outside the United States, under rules of such exchange. The court held this language sufficient to establish consent to the jurisdiction of a New York court to compel arbitration.[8] It characterized such a provision as a forum selection clause.
*22 Lest the concept of a forum selection clause, referred to in Lecopulos (supra), be misread as referring to a hearing locale provision, it is important to stress that the place where the actual arbitration hearing occurs is a matter for the Director of Arbitration under section 26 of the NASD Code. (See, n 4, supra.) This is not a valid point on which to distinguish Lecopulos because rule 613 of the rules of NYSE, the organization invoked in that case, is virtually identical.[9] Indeed, the predicate for jurisdiction in Lecopulos was not that the agreement required that the arbitration hearings take place in New York. Plainly, the agreement did not do that. Rather, the agreement specified arbitration under the auspices of NYSE which could direct a non-New York situs for the hearings just as NASD can do. The auspices of NYSE amounted to a New York forum; the type of forum was arbitral. This is enough for a New York court to exercise jurisdiction over the parties with respect to the arbitration regardless of where the hearings are ultimately conducted. (See, Merrill Lynch, Pierce, Fenner & Smith v Shaddock, 822 F Supp 125.)
Neither is it a controlling distinction that no choice was given in the Lecopulos agreement between the NYSE and the NASD. First, a choice of a New York and non-New York arbitration facility was, indeed, afforded in Lecopulos (supra); and despite the fact that Merrill Lynch and not Lecopulos selected the New York forum, it sufficed to obtain jurisdiction over Lecopulos that he entered into an agreement yielding such a possibility. Second, it makes no sense to conclude that no New York jurisdiction exists where the agreement gives the parties a choice between New York-based arbitration organizations but does exist where there is but one such organization specified in the agreement. (But see, Merrill Lynch, Pierce, Fenner & Smith v East, NYLJ, Nov. 9, 1993, at 26, col 4 [Sup Ct, NY County, Lippmann, J.].) In fact, the "cheese becomes more binding” where there is a choice of arbitration organizations, one based in New York and one elsewhere, and the claimant has chosen the New York facility, as did the respondents in both cases at bar. (See, Merrill *23 Lynch, Pierce, Fenner & Smith v Gimenez, index No. 10530/92, Aug. 18, 1992, slip opn, at 7 [Sup Ct, NY County, Nardelli, J. (now of the Appellate Division, First Department)].)
An additional reason to adhere to the Lecopulos analysis of jurisdiction over a claimant in arbitration inheres in the concept, previously discussed, that a party who participates in arbitration forfeits the right to stay it. (CPLR 7503 [b].) If the cases on which respondents rely, Merrill Lynch, Pierce, Fenner & Smith v Samples (supra), Merrill Lynch, Pierce, Fenner & Smith v Renko (supra), and Prudential Sec. v Cohn (supra), are followed, a petitioner may be found to have participated in the arbitration before having an opportunity to seek a stay. Those cases imply that a petitioner can move for a stay in the jurisdiction where the hearing is to be held. But, under section 26 of the NASD Code, notice of the selection of the locale may be made by the Director of Arbitration as late as eight days before the hearing. By then, a petitioner will have been required to file an answer with counterclaims and cross claims. (NASD Code § 25 [b].) Such a party will also have been required to make its position with respect to hearing locale and dates known to the Director of Arbitration before then or forfeit any input on these subjects. Activities of this dimension may be held to amount to participation in the arbitration. (Matter of Boston Old Colony Ins. Co. [Martin], 34 AD2d 776, supra; cf., Hull Dye & Print Works v Riegel Textile Corp., 37 AD2d 946, supra.) It seems grossly unfair to subject a petitioner to such hazards.
If the Samples, Renko and Cohn cases (supra) required the petitioners at bar to resort to a Florida court for a stay, the contractual choice of New York law would still be effective. In such a circumstance, Florida would apply the concept of participation to hold a petitioner to its waiver of the right to resort to the court for a stay of arbitration.[10] Indeed, Florida courts seem to apply a standard perhaps more rigorous than New York’s, measured by the mere passage of time and the lack of an objection to the arbitral tribunal. (See, Victor v Dean Witter Reynolds, 606 So 2d 681 [Fla, Ct App, 5th Dist *24 1992], review denied 614 So 2d 502; see also, n 5, supra; Dra-Po Constr. Co. v Riso & Sons Co., 149 AD2d 651, 652.) In any event, it is clear that if a petitioner must wait until the Director of Arbitration selects a locale, possibly as close as eight days before the hearing, it may be held to have waived the right to seek a stay. (Victor v Dean Witter Reynolds, supra; see also, Marschel v Dean Witter Reynolds, 609 So 2d 718 [Fla, Ct App, 2d Dist 1992], review denied 617 So 2d 318.)
Accordingly, this court is persuaded to adhere to its former opinion of personal jurisdiction expressed in Merrill Lynch, Pierce, Fenner & Smith v Sheets (supra). While the agreements respondents signed may be contracts of adhesion, by executing them they voluntarily endowed this court with jurisdiction over them to regulate the arbitration proceedings they elected to bring before the NASD. This accords with due process[11] and is the only practical and fair result that can be achieved since the locale of the arbitration is unknown until the Director of Arbitration fixes it. This may occur too late for a petitioner to avoid waiving the right to seek a stay by participating in the arbitration.
The petitions are disposed of in accordance with the foregoing. The cross motions in each proceeding are denied.
[Portions of opinion omitted for purposes of publication.]

. A later dated "Margin Agreement” signed by the respondents in 1991, after Gold died, prescribed that any cause of action was subject to the Statute of Limitations applicable in their State of residence — Florida.

. It is not revealed whether Smith Barney interposed an answer or executed a submission.

. Under the NASD Code, it is unclear what authorizes the Director of Arbitration to entertain a motion to dismiss because a claim exceeds the time limit of section 15. Section 16 authorizes the arbitrators to dismiss a proceeding. Section 12 authorizes the Director of Arbitration, on approval of the National Arbitration Committee or its Executive Committee, to decline the use of its arbitration facilities for any claim that is not a proper subject matter for arbitration.

. Sections 4 and 20 of the Code prescribe that the Director of Arbitration shall determine who shall serve on a panel. Section 26 invests the Director of Arbitration with the power to determine the time and place of the initial hearing.

. The impression could be discerned from language in this case that a reservation of the right to resort to a court for a stay is a requirement to *17 avoid being held to have participated in the arbitration. (Cf., Matter of Boston Old Colony Ins. Co. [Martin], supra.) But, there are cases where such a reservation was no help in avoiding a decision that the party had participated. (See, e.g., Hodges Intl. v Rembrandt Fabrics, 44 AD2d 77, 78-79, supra; Matter of National Cash Register Co. [Wilson], supra; Matter of Government Empls. Ins. Co. [Johnston], 72 AD2d 892, supra.)
The attempt to reserve the right to seek a court stay of arbitration, then, is but one factor in deciding whether a party’s actions are consistent with the preservation of this right (DeSapio v Kohlmeyer, 35 NY2d 402, 405, supra), rather than a sine qua non to avoid being held to have participated.

. A nearly identical procedure prevails in arbitrations under the rules of the New York Stock Exchange (NYSE). (See, NYSE rules 607, 613.) By contrast, in arbitrations under the rules of the American Arbitration Association (AAA), the parties become enmeshed in the selection of the arbitrator (Securities Arbitration Rules of the AAA rule 130). The AAA will fix the locale of the hearing if the parties disagree (id., rule 11) but the arbitrator sets the date, time and place for each hearing (id., rule 21).

. He read Lecopulos (supra) and its progeny as fixing New York as "the undisputed forum for arbitration.” Yet, the agreement in Lecopulos did not specify where the hearings would be held, but only that arbitration would be conducted under the rules of the NYSE.

. It is notable that the Lecopulos court held the mere entry into such an agreement was enough to endow New York courts with jurisdiction over the parties to it. In each case at bar, we have even more: Each respondent not only entered into an agreement specifying a New York arbitration organiza *22 tian, but they actually resorted to that organization to commence their respective arbitrations.

. (See, n 6, supra.) Rule 613 provides: "The time and place for the initial hearing shall be determined by the Director of Arbitration and each hearing thereafter by the arbitrators.” Section 26 provides: "The time and place of the initial hearing shall be determined by the Director of Arbitration and each hearing thereafter by the arbitrators.”

. Although the Arbitration Code in Florida does not express the concept of waiver by participation in the arbitration as a disqualification for seeking a stay (Fla Stat Ann, tit 39, § 682.03 [4]) or opposing confirmation of an award (id., § 682.12; but see, id., § 682.13 [1] [e] [vacating the award]), this has been judicially imposed. (Koch v Waller & Co., 439 So 2d 1041, 1043 [Fla, Ct App, 4th Dist 1983]; cf., Peircy v School Bd., 576 So 2d 806, 807 [Fla, Ct App, 1st Dept [1991].)

. Respondents’ contentions that long-arm jurisdiction under CPLR 301 and 302 is lacking are also unavailing. (Merrill Lynch, Pierce, Fenner & Smith v Lecopulos, supra, at 844; Merrill Lynch, Pierce, Fenner & Smith v Shaddock, supra, at 130.)